Harold Neal WHITLEY and Norma Jean Whitley, Appellants,

v.

OOLOGAH INDEPENDENT SCHOOL DISTRICT NO. I–4 OF ROGERS COUNTY, an Oklahoma political subdivision; State Farm Mutual Automobile Insurance Company, an insurance corporation; Security National Insurance Company, an insurance corporation; and Mikeal T. Wyckoff, Appellees.

No. 61351.

Supreme Court of Oklahoma.

July 21, 1987.

As Corrected July 24, 1987.

W.C. Sellers, Sapulpa, for appellants.

Paul T. Boudreaux, Joseph A. Sharp, Patricia K. Lamb, Best, Sharp, Thomas, Glass & Atkinson, Tulsa, for appellees.

PER CURIAM:

The appellants, Harold and Norma Jean Whitley, sustained bodily injury and property damage in a five-vehicle accident on June 18, 1982. The chain-reaction collisions were alleged to have been proximately caused by a school bus, owned and operated by Oologah Independent School District No. I–4, which was at that time being driven by its employee, Mikeal T. Wyckoff.

On July 13, 1982, the Whitleys notified the school district superintendent of their claim against the school district for vehicular damage and bodily injury resulting from the accident. On October 2, 1982, the Whitleys entered into a settlement agreement with State Farm Automobile Insur-

ance Company, the insurer of the school district, with respect to the prepayment of vehicular damage. The Whitleys and State Farm thereafter continued settlement negotiations relating to the personal injury portion of the Whitleys' claim against the school district. By letter, dated March 30, 1983, State Farm requested a settlement conference with Whitleys' counsel on April 13, 1983, "so that a proper offer can be made and we can begin to work toward closing of this matter". Further fruitless settlement negotiations concerning the personal injury portion of the Whitleys' claim continued until such time as the Whitleys filed suit on July 7, 1983.

The school district, State Farm, and Wyckoff objected to the filing of this suit on the ground that the court had no jurisdiction under the doctrine of sovereign immunity. The trial court elected to treat the appellees' motion as a special demurrer and allowed the appellants to amend their petition. After the amended petition was filed, the named appellees renewed their objections to appellants' suit. Appellees contended the procedural guidelines set forth by 51 O.S.1981 § 151 et. seq. had not been followed and the suit was thus barred by sovereign immunity. On October 20, 1983, the trial court entered an order treating the objections raised by appellees as a special demurrer. The special demurrer was overruled as to Wyckoff. However, the special demurrer was sustained as to appellee, Oologah Independent School District No. I-4, and the school district was dismissed from the suit. On appeal, the appellants argue the trial court erred in sustaining the special demurrer as to the school district; and that the trial court erroneously dismissed the school district from the suit.

The requirements for maintaining suit against a political subdivision are set forth at 51 O.S.1981 § 156(C) which provides in part:

No action for any cause arising under this act shall be maintained unless valid notice has been given and the action is commenced within six (6) months after notification of denial of the claim by the clerk of political subdivision.

Likewise, the requisite basis for denial of a claim by a political subdivision is explained in 51 O.S.1981 § 157:

Within ninety (90) days after receiving the filing of a claim, the clerk of the political subdivision shall notify the claimant in writing of the approval or denial of the claim. *A claim is denied if the political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the interested parties have reached a settlement before the expiration of that period. A person may not initiate a suit against a political subdivision or employee whose conduct gave rise to the claim unless the claim has been denied in whole or in part.* (emphasis added)

This Court has interpreted the statutes as allowing a 90-day period after the filing of a claim in which a political subdivision may approve a claim. If the claim is not approved during that period, the claim is deemed denied by operation of law. *Neal v. City of Blackwell,* 670 P.2d 587, 588 (Okl.1983). *Also See, Lucas v. Independent Public School District Number 35 of Holdenville,* 674 P.2d 1131, 1133 (Okl.1983) wherein it is stated:

There appears on the record no approval, therefore it was deemed denied ninety days from the date of notice.... Where a claim is deemed denied, the six-month limitation of Section 156(C) is activated. This is the reasonable construction of the statute despite that section's language, "and the action is commenced within six (6) months after notification of denial of the claim by the clerk of the political subdivision."

At issue here, however, is the application of the statutes where there has been a partial settlement or partial approval of the claim. The portion of the Whitleys' claim relating to property damage was settled shortly before the expiration of the 90-day period, but negotiations continued as to the settlement of the remainder of the claim. By virtue of the partial settlement and promises to settle the remainder of the claim, it is the Whitleys' contention that the 90-day period was tolled and the six-month

time limit was never triggered. We agree. One cannot equitably lull an adversary into a false sense of security, thereby subjecting his claim to the bar of limitations, and then be heard to plead that very delay as a defense to the action. *Hart v. Bridges,* 591 P.2d 1172 (Okl.1979). The action filed within six months of April 13, 1983, the appointed date for negotiations, was hence timely. The judgment of the trial court is therefore REVERSED and this cause is REMANDED for further proceedings.

DOOLIN, C.J., and SIMMS, OPALA, WILSON and SUMMERS, JJ., concur.

HARGRAVE, V.C.J., and HODGES, LAVENDER, JJ., dissent.

KAUGER, J., disqualified.

OPALA, Justice, concurring.

Although I accede to today's judgment and concur in the court's pronouncement, I write separately to *add* that the *insurer's own act* prevented this claim from qualifying as one that was denied "in whole or in part" within the meaning of 51 O.S.1981 § 157.[1]

**I**

When the insurer wrote to the plaintiffs' counsel on March 30, 1983 to propose a settlement conference on April 13, 1983 the insurer unequivocally manifested its conscious recognition of the plaintiffs' claim as one that still stood in *unrejected status.*

Since under the terms of 51 O.S.1981 §§ 156(C)[2] and 157 *no* action may be brought until a claim has been *denied,* plaintiffs could not initiate their suit before April 13, 1983. They hence had, at a minimum, six months from that day to institute the present action.[3] Their July 7, 1983 filing was hence timely.

**II**

**A. The time limit during which no action may be commenced against a political subdivision is *procedural* and must be viewed as a true statute of limitations.**

Two conceptually distinct time bars are recognized by the common law—(1) an "ordinary" or "true" statute of limitations that regulates the time *to bring* an action and (2) a time limit that conditions the exercise of a right and must hence be viewed as a substantive element of the claim.[4] The former bars *only the remedy;* the latter extinguishes *the right as well as the remedy.*

1. The terms of 51 O.S.1981 § 157 provided: "Within ninety (90) days after receiving the filing of a claim, the clerk of the political subdivision shall notify the claimant in writing of the approval or denial of the claim. *A claim is denied if the political subdivision fails to approve the claim in its entirety within ninety (90) days,* unless the interested parties have reached a settlement before the expiration of that period. *A person may not initiate a suit against a political subdivision or employee whose conduct gave rise to the claim unless the claim has been denied in whole or in part."* [Emphasis supplied.]

2. The terms of 51 O.S.1981 § 156(C) provided: "The written notice of claim shall state the time, place and circumstances of the claim and the amount of compensation or other relief demanded. Failure to state either the time, place, circumstances and amount of compensation demanded shall not invalidate the notice unless the claimant declines or refuses to furnish such information within ninety (90) days after demand by the political subdivision. No action for any cause arising under this act shall be maintained unless valid notice has been given and the action is commenced within six (6) months after notification of denial of the claim by the clerk of the political subdivision. The time for giving written notice of claim does not include the time during which the person injured is unable due to incapacitation from the injury to give such notice, not exceeding ninety (90) days of incapacity."

3. See 51 O.S.1981 § 156(C), *supra* note 2; see also in this connection, *Harvey v. Kern County,* 107 Cal.App. 590, 290 P. 648, 651 [1930].

4. *Pinson v. Robertson,* 197 Okl. 419, 172 P.2d 625, 627 [1946]; *Saak v. Hicks,* Okl., 321 P.2d 425, 429 [1958]; *Hiskett v. Wells,* Okl., 351 P.2d 300, 304 [1959]; *Phillips Petroleum Company v. United States Fidel. & G. Co.,* Okl., 442 P.2d 303, 305 [1968] and *Trinity Broadcasting Corp. v. Leeco Oil Co.,* 692 P.2d 1364, 1367 [1984].

If the triggering mechanism provided by 51 O.S.1981 § 157 [5] to mark the commencement of a six-month period for bringing an action, or to mark the end of an interval during which no suit may be filed, could be viewed as a *"negative"* statute of limitations [6]—a time bar to an action's premature commencement—its provisions would be deemed to affect only the *remedy.* On the other hand, if that mechanism's 90–day time bar were to be regarded as a condition on the *right* or as a substantive element of the claim, it would limit the court's *power* to entertain the claim. In the latter event estoppel could not be invoked to prevent the governmental tortfeasor's use of the § 157 rejection-or-settlement interval as an absolute defense. This is so because the *power* of the court to entertain the claim would automatically cease [7] at the expiration of the very period prescribed for its exercise.

Unless the statute explicitly states otherwise, the time for bringing a claim against the government is procedural and should be viewed as a statute of limitations. [8] Whether the § 157 triggering mechanism of The Political Subdivision Tort Claims Act [Act] [9] constitutes a limitation on the exercise of judicial *power* and a condition on the *right,* or merely limits the time during which an action may not be filed, is to be determined from its language. [10]

The terms of § 156(C) plainly evince a legislative design to limit the *right* to sue if *no notice* has been given to the governmental tortfeasor or if no action is timely brought. Notice-of-claim requirements

have been said to embody a legislative policy that the *right* to sue a governmental body requires compliance with the prescribed statutory conditions. [11] The pertinent language of that section which demonstrates clearly that failure to give notice or timely to file suit is *fatal* to the claim is:

> *" * * * No action for any cause* arising under this act *shall be maintained unless valid notice has been given* and the *action is commenced within six (6) months* after notification of denial of the claim by the clerk of the political subdivision. * * * "* [Emphasis added.]

In contrast, the 90–day period during which no *action* may be brought clearly was intended as a negative statute of limitations. No language comparable to that in § 156(C) is used in § 157 to condition a *right* or limit the court's *power.*

> *" * * * A claim is denied* if the political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the interested parties have reached a settlement before the expiration of that period. * * * "* [Emphasis added.]

In short, the § 156(C) *notice* and the commencement-of-action provisions affect the *right;* the 90–day time limit in § 157 is but a negative statute of limitations—a remedial device that bars an action's premature commencement. Because I distinguish the *time span for giving notice* and for *filing an action* from the 90–day *time interval* —the end of which *triggers the six-month period for commencing suit*—and consider

5. See footnote 1 *supra* for the text of 51 O.S. 1981 § 157.

6. A "negative" statute of limitations is one that provides a period during which an accrued cause of action *may not* or *need not* be brought. See 85 O.S.1981 § 106; *United Brick and Tile Company v. Roy,* Okl., 356 P.2d 107, 109 [1960] and *Smith v. State Industrial Commission,* 182 Okl. 433, 78 P.2d 288, 289 [1938].

   The negative-statute-of-limitations concept is at times referred to as a *waiting period* during which as action against a governmental tort defendant may not be brought. See Annot., Plaintiff's Right to Bring Tort Action Against Municipality Prior to Expiration of Statutory Waiting Period, 73 A.L.R.3d 1019 [1976].

7. *Hiskett v. Wells, supra* note 4; *Phillips Petroleum Company v. United States Fidel. & G. Co.,*

*supra* note 4, and *Jarvis v. City of Stillwater,* Okl., 732 P.2d 470, 472, 473 [1987].

8. See *Taylor v. City of Los Angeles,* 180 Cal. App.2d 255, 4 Cal.Rptr. 209, 214 [1960].

9. 51 O.S.1981 §§ 151 et seq. The title of the Act was changed in 1984 to "The Governmental Tort Claims Act," Okl.Sess.L.1984, Ch. 226, § 1, eff. October 1, 1985 (51 O.S.Supp.1984 § 151).

10. *State ex rel. Cent. State Griffin Mem. Hosp. v. Reed,* Okl., 493 P.2d 815, 817–818 [1972].

11. See Annot., *Actual Notice or Knowledge by Governmental Body or Officer of Injury or Incident Resulting in Injury as Constituting Required Claim or Notice of Claim for Injury—Modern Status,* 7 A.L.R.4th § 2, 1063, 1066 [1981].

only the former as a condition on the exercise of the claimant's *right* to seek redress, I read the latter as one that has the same attributes as any ordinary statute of limitations.

**B. The insurer's misleading conduct estops it from asserting that the action was not timely brought.**

Estoppel may be applied against a governmental entity if its interposition would further some principle of public policy or interest.[12] The pivotal question here is whether the facts and circumstances of the instant case implicate some prevailing public interest that will except it from the general rule that precludes the use of estoppel against the government. I believe they do.

The public interest clearly favors the plaintiffs' position of promoting the settlement of claims rather than of encouraging long court proceedings. Any efforts by the parties to effect a settlement would become meaningless if the 90–day period in § 157 were construed as requiring the claimant to file a lawsuit in the face of unqualified assurances of settlement from the insurer or the governmental agency. It is my view that protection of the settlement process implicates sufficient public-policy considerations to afford here a basis for interposing estoppel against a public agency.

Whether a defendant is estopped from interposing the defense of a § 157 time bar could be raised by a plaintiff's allegations and proof that the defendant had made (a) some assurance of settlement negotiations reasonably calculated to lull the plaintiff into a sense of security and to delay action beyond the 90–day period, (b) an express and repeated admission of liability in conjunction with promises of payment, settlement or performance, or (c) any false,

fraudulent or misleading conduct, or some affirmative act of concealment that would exclude suspicion and preclude inquiry or would induce one to refrain from bringing an action in a timely manner.[13]

According to the record, the plaintiffs agreed on October 2, 1982 to settle with the insurer on prepayment of the vehicle's damages while negotiations would go on to settle the personal injury element of their claim. The insurer's actions of proposing a settlement conference manifested its conscious recognition of the unrejected status in which the plaintiffs' claim was held. The insurer knew or should have known that the claimant was relying on these negotiations and would not treat the claim as having been rejected until the April 13th conference had failed. Because the plaintiffs doubtless placed reasonable reliance upon the insurer's actions to their detriment, the insurer's misleading conduct estops it from asserting that the 90–day bar of § 157 began earlier than April 13.

HODGES, Justice, dissenting.

I must respectfully dissent from this Court's pronouncement that, by virtue of the partial settlement and promises to settle the remainder of the claim, the 90 day period of 51 O.S.1981 § 157 was tolled and the six month limitation period of 51 O.S. 1981 § 156(C) was never triggered. This decision ignores the unequivocal mandate of 51 O.S.1981 § 157. In pertinent part, Section 157 precisely states:

"A claim is denied if the political subdivision fails to approve the claim in its *entirety* within ninety (90) days, unless the interested parties have *reached a settlement* before the expiration of that period." (Emphasis added).

---

**12.** *Burdick v. Independent School Dist.,* Okl., 702 P.2d 48, 53 [1985] and *Board of Ed. of Ind. Sch. Dist. No. 48, Hughes Cty. v. Rives,* Okl., 531 P.2d 335, 337 [1974]. The rationale for giving a governmental entity a shield from estoppel is to enable the state to protect public policies and interests from being jeopardized by judicial orders that prevent full performance of legally imposed duties. *Burdick, supra,* and *Indepen-*

*dent School Dist. No. 4 v. State Board of Ed.,* Okl., 451 P.2d 684, 686 [1969].

See Annot., Waiver of, or estoppel to assert, failure to give required notice of claim of injury to municipality, county, or other governmental agency or body, 65 A.L.R.2d 1278 [1959].

**13.** See *Jarvis v. City of Stillwater, supra* note 7 at 472–473.

This phrase controls the disposition of the case now before the Court. As I perceive it, the case turns on the word "entirety." In my opinion "entirety" means "entirety." This Court has generally held a clear and unambiguous statute is given a literal construction and the statute is accorded the meaning as expressed by the language therein employed. *Matter of Phillips Petroleum Co.*, 652 P.2d 283, 285 (Okla.1982). Accordingly, under the clear, plain language of Section 157, I am impelled to hold inviolate its literal meaning. Because the school district failed to deny, approve or settle the claim in its *entirety* within 90 days after receiving the filing of the claim, I would find the claim deemed denied upon the expiration of the 90 day period.

Although a *partial* settlement was reached as to the claim for property damages within the 90 day period, and the parties were purportedly engaged in ongoing negotiations to reach a settlement concerning the remainder of the claim, a settlement was not "reached" concerning the entire claim within the 90 day period. Regardless of the actions taken by appellees after the six month limitation period of Section 156(C) had run, and despite any negotiations or possibilities of settlement of the remainder of the claim within the 90 day period, appellants' claim was deemed denied by operation of law upon the expiration of the 90 day period. Inasmuch as the entire claim had not been denied, approved or settled in its entirety within the 90 day period, this Court is powerless to toll the claim which is deemed denied by mandate of our legislature.

This Court has previously given 51 O.S. 1981 §§ 156(C) and 157 a strict construction in the context of the filing requirement and the statute of limitations. My interpretation of these sections is consistent with this Court's pronouncement in *Neal v. Blackwell*, 670 P.2d 587 (Okla.1983). There we rejected the contention that strict compliance with the Political Subdivision Tort Claims Act was not required when the county failed to notify the claimant in writing of approval or denial of the claim with-

in 90 days after receiving notice of the claim. Similarly, in the case of *Lucas v. Ind. Public School Dist. No. 35*, 674 P.2d 1131 (Okla.1983), this Court held where there is no approval of the claim by the political subdivision within 90 days, the six month limitation of Section 156(C) is activated. Appellants refer to *Reirdon v. Wilburton Board of Education*, 611 P.2d 239 (Okla.1980), for the proposition that strict compliance with the statutes is not necessary as long as there is substantial compliance. *Reirdon* involves substantial compliance with the notice requirement of 51 O.S.1981 § 156(B); whereas, the case before us deals with the filing requirement and statute of limitations. Our interpretation of Sections 156 and 157 in *Neal, supra*, and *Lucas, supra*, is not a liberal one. I believe we should give no other interpretation of these statutes than what is apparent on their face. Today's decision is contrary to the plain language of Sections 156(C) and 157.

Appellants notified the school district of their claim on July 13, 1982, thereby making October 12, 1982, the date the claim was denied by operation of law and the dispositive date in which the Section 156(C) statute of limitations began to run. Accordingly, appellants' claim was barred by the statute of limitations on April 12, 1983. Appellants filed their suit on July 7, 1983, well outside the applicable statute of limitations. I, therefore, would affirm the trial court's order dismissing the suit against the school district.

For these reasons I must dissent from the opinion of the Court.

LAVENDER, Justice, dissenting:

I would affirm the judgment of the trial court.

The appellee in the present case has raised a proposition in support of the trial court's decision which requires a disposition of the case at odds with the result reached. Citing the cases of *Hiskett v. Wells*[1] and *Phillips Petroleum Co. v.*

---

1. Infra, note 4.

*United States Fidelity & Guaranty Co.,* [2] appellee points out the general rule that a substantive statute of limitation is not subject to claims of estoppel. In *Hiskett* we applied this principle, finding that the limitations period in question in that case was substantive in nature and not subject to a claim of estoppel. An analysis of the legislation here involved, reveals that the time limits are substantive in nature and that estoppel may not be applied to toll the time periods, as the right of action itself ceased to exist on the expiration of the period set within which to bring the action. [3]

Oklahoma has recognized the distinction between limitation periods which are part of a statute creating a cause of action unknown at common law and those limitation periods which are generally aimed at barring an available remedy to prevent the assertion of stale claims. [4] Those limitation periods enacted as part of the legislation creating a cause of action are generally held to be a substantive part of the cause of action, so that when the limitation period expires the assertion of the cause of action is not merely barred, the cause of action itself has ceased to exist. [5]

In *Trinity Broadcasting Corp. v. Leeco Oil Co.,* [6] we set forth the elements for identifying the existence of a substantive limitation period:

The statute (a) creates a new liability, (b) gives an action to enforce the liability that was unknown at common law, (c) fixes a time within which one must bring such action, and (d) the limitation is directed at the newly created right so specifically as to say it qualifies the right,

not just the remedy, *Hiskett v. Wells,* infra note 11 at 304.

The statutory provision which is in question in the present case is that section of the Political Subdivision Tort Claims Act [7] which sets limitation periods on the assertion of claims against the political subdivision. This section, 51 O.S.1981 § 156, provided: [8]

A. Any person having a claim against a political subdivision or an employee within the scope of this act shall petition the political subdivision for any appropriate relief including the award of money damages.

B. A claim against a political subdivision or employee shall be forever barred unless notice thereof is filed with the clerk of the governing body of the political subdivision within one hundred twenty (120) days after the loss occurs.

C. The written notice of claim shall state the time, place and circumstances of the claim and the amount of compensation or other relief demanded. Failure to state either the time, place, circumstances and amount of compensation demanded shall not invalidate the notice unless the claimant declines or refuses to furnish such information within ninety (90) days after demand by the political subdivision. No action for any cause arising under this act shall be maintained unless valid notice has been given and the action is commenced within six (6) months after notification of denial of the claim by the clerk of the political subdivision. The time for giving written notice of claim does not include the time during

2. Infra, note 4.

3. See *Hiskett v. Wells,* infra, note 4; and see also *Wood Acceptance Co. v. King,* 18 Ill.App.3d 149, 309 N.E.2d 403 (1974); *Sprung v. Rasmussen,* 180 N.W.2d 430 (Iowa 1970); *Romano v. Romano,* 19 N.Y.2d 444, 280 N.Y.S.2d 570, 227 N.E.2d 389 (1967); *Neff v. Garrard,* 216 Va. 496, 219 S.E.2d 878 (1975).

4. *Hiskett v. Wells,* 351 P.2d 300 (Okla.1959); see also *Trinity Broadcasting Corp. v. Leeco Oil Co.,* 692 P.2d 1364 (Okla.1984); *Phillips Petroleum Co. v. United States Fidelity & Guaranty Co.,* 442 P.2d 303 (Okla.1968). And see *Sprung v. Rasmussen,* supra note 3.

5. See *Lamb v. Young,* 250 Or. 228, 441 P.2d 616 (1968); and see *Vecchio v. Sewer Authority,* 176 Conn. 497, 408 A.2d 254 (1979).

6. 692 P.2d at 1367 (footnote 9 of the opinion), supra note 4.

7. 51 O.S.1981 §§ 151 through 170.

8. The Political Subdivision Tort Claims Act has now been superceded by The Governmental Tort Claims Act, 51 O.S.Supp.1984, §§ 151 through 171, effective October 1, 1985.

which the person injured is unable due to incapacitation from the injury to give such notice, not exceeding ninety (90) days of incapacity.

D. When the claim is one for death by wrongful act or omission, notice may be presented by the personal representative, surviving spouse or next of kin or other legal representative or the consular officer of a foreign country of which the deceased was a citizen, within one (1) year after the alleged injury or loss resulting in such death. Provided, however, if the person for whose death the claim is made has presented notice that would have been sufficient had he lived, an action for wrongful death may be brought without any additional notice.

Applying the analysis set forth in *Trinity Broadcasting*, it is apparent that the Act creates a new liability on the part of political subdivisions, and creates a right of action which did not exist at common law as the action and liability of an independent school district were barred by the concepts of governmental immunity.[9] Subsections (B) and (C) of section 156 set forth definite times within which a notice of claim must be presented to the political subdivision and within which an action must be commenced after the claim has been denied. The statute also clearly states that no action may be maintained unless the notification and time requirements are complied with. This provision is clearly directed at the cause of action and is not a general limitations provision.

Appellants in this case argue that the language of the section, as it sets forth the time limits, is meant only to apply to the existence of the remedy offered and not to the existence of the right of action. In support of this argument appellants cite two cases, *Bryant v. Whitley*[10] and *Myers v. Stevenson*.[11] Neither of the cited cases support appellants' assertions. Both cases

acknowledge the general rule, as stated in *Bryant:*[12]

"[A] statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits."

In *Bryant* the court went on to find the general rule not applicable where the right of action had actually existed prior to the passage of the statute under consideration. In *Myers* the court stated that there was a tendency to ameliorate the application of the rule where a potential claimant had been denied practical access to the courts by the fact that the existence of the injuries giving rise to a cause of action could not have been known to a potential claimant prior to the expiration of the limitation period under a statute creating a cause of action for medical malpractice for injuries to an unborn child.

Neither of the rationales expressed in *Bryant* or *Myers* are applicable in the present case. The cause of action here clearly did not exist prior to the authorizing legislation, and appellants were fully aware of the existence of their cause of action prior to the expiration of the time limits.

In construing the language of the Political Subdivision Tort Claims Act there is one other precept which must be considered; statutes dealing with the relaxation of sovereign immunity from suit are to be strictly construed.[13] To find that this provision, which clearly limits the ability to bring suit under this statutory provision, is capable of being tolled by equitable considerations arising from the actions of third party insurance agents, would in effect eviserate what is obviously intended to be a substantive part of the Political Subdivisions Torts

**9.** *Wright v. Consolidated School Dist. No. 1,* 162 Okl. 110, 19 P.2d 369 (1933).

**10.** 70 Ga.App. 864, 29 S.E.2d 648 (1944), affirmed 198 Ga. 328, 31 S.E.2d 701.

**11.** 125 Cal.App.2d 399, 270 P.2d 885 (1954).

**12.** 29 S.E.2d at 649.

**13.** *Reynolds v. U.S.,* 18 F.Supp. 739 (N.D.Okla. 1937).

Claim Act, and would clearly be in violation of the cited tenet of statutory construction.