Robert TRENT, a minor child, By and Through his mother and next friend, Laura Louise TRENT, and Laura Louise Trent, an individual, Appellants,

v.

The BOARD OF COUNTY COMMIS-SIONERS OF JOHNSTON COUNTY, Appellee.

Ronald TRENT, a minor child, By and Through his mother and next friend, Laura Louise TRENT, and Laura Louise Trent, an individual, Appellants,

v.

The BOARD OF COUNTY COMMIS-SIONERS OF JOHNSTON COUNTY, Appellee.

Douglas LOWE, a minor child, By and Through his father and next friend, Arbie LOWE, and Arbie Lowe, an individual, Appellants,

v.

The BOARD OF COUNTY COMMIS-SIONERS OF JOHNSTON COUNTY, Appellee.

Nos. 59348, 59349 and 59350.

Supreme Court of Oklahoma.

Feb. 16, 1988.

As Corrected Feb. 17, 1988.

Rehearing Denied June 21, 1988.

Ronald E. Worthen, Dist. Atty., and Richard A. Miller, Asst. Dist. Atty., Tishomingo, for appellee.

Stipe, Gossett, Stipe, Harper, Estes, McCune and Parks by Michael Parks, McAlester, for appellants.

PER CURIAM.

This consolidated appeal is taken from the Minute Orders of the District Court of Johnston County, each dated October 22, 1982, sustaining identical special demurrers filed in three separate cases and rendering moot other motions and demurrers filed therein. Thereafter, the District Court issued Orders Nunc Pro Tunc correcting the prior orders to show that the actions were dismissed pursuant to the sustention of the special demurrers.

The three claims in district court arose out of a single accident which occurred on October 23, 1981. Robert Trent, Ronald Trent and Douglas Lowe (appellants), all minors, were injured when the truck in which they were riding left the road as a result of a washed out bridge. All three boys received severe injuries in the accident. The road and the bridge are owned and maintained by the Board of County Commissioners of Johnston County (County or appellee).

On November 12, 1981, the law firm of Harris, Ghostbear and Sell mailed written notice of the claims asserted on behalf of appellants to the County Clerk of Johnston County pursuant to the Political Subdivision Tort Claims Act, 51 O.S. 1981 § 151, et seq.[1]

On January 25, 1982, the County mailed the appellants' attorneys a letter requesting their attendance at a meeting of the County Commissioners on February 1, 1982. On February 1, 1982, one of the attorneys representing appellants met with the County. At this meeting, the County discussed the claims with the attorney. The assistant district attorney for the County requested him to submit medical documents and other records concerning the claims. Nothing in the record reflects that the County either denied or approved appellants' claims at this meeting.

On March 1, 1982, appellants were notified that their claims were denied. Thereafter, on or about April 28, 1982, the appellants' attorneys withdrew their representation of appellants. Appellants retained another law firm which was furnished with the letter dated March 1, 1982. They were also given a letter from the former attorneys advising that they had been given notification of the denial of the claims by letter dated March 1, 1982.

On August 25, 1982, law suits were filed on behalf of appellants in the District Court of Johnston County. Appellee filed

---

1. The Political Subdivision Tort Claims Act is superceded by The Governmental Tort Claims Act, 1984 Okla.Sess.Laws, Ch. 226, §§ 1 through 18 and codified as 51 O.S.Supp.1984 §§ 151 through 171, effective October 1, 1985.

special and general demurrers and motions to dismiss in each of the three cases. Appellee demurred on the ground that appellants' claims were barred by 51 O.S. 1981 §§ 156 and 157 for failure to initiate their claims within six months of the denial of the claims by operation of law. The County contends the claims were denied by operation of law 90 days after the County was notified of the claims. They were notified on November 12, 1981, thereby making February 11, 1982, the date from which the six month filing period began to run.

The issue on appeal is:

Whether the claims in district court were timely filed within six months after notification of denial of the claims pursuant to 51 O.S. 1981 §§ 156 and 157.

Appellants ask this Court to reverse the district court's orders sustaining appellee's special demurrers filed in each of the three cases. As stated above, the issue to be resolved is whether the six month statute of limitations as provided in 51 O.S. 1981 § 156(C) begins to run upon actual notice of the denial of the claims or upon the expiration of 90 days when the claim is automatically denied. The crucial dates are February 11, 1982 and March 1, 1982. February 11th is the date the 90 day waiting period expired and the claims were denied by operation of law. March 1st is the date appellants received actual notice by way of letter that the claims were denied. Appellants contend that March 1st is the dispositive date, thereby making the suits filed on August 25, 1982 within the six month filing period. Appellee contends that February 11th is the dispositive date because the County failed to approve each of the claims in their entirety within 90 days, thereby triggering the second sentence in § 157.

We find the district court properly determined February 11, 1982, when the claims of appellants were denied by operation of law under § 157, as the date by which the six month statute of limitations began to run. The sustention of the special demurrers was proper and the dismissal of the cases was correct because appellants commenced each of their three separate lawsuits on August 25, 1982, 14 days after the six month statutory filing time had run.

On its face, § 157 provides for the automatic denial of a claim after 90 days if it has not been denied, approved or settled at an earlier date. None of these circumstances are present in this case.

The recent case of *Whitley v. Oologah S.D. I-4 of Rogers Cty.*, 741 P.2d 455 (Okl. 1987), is factually distinguishable from the present matter. *Whitley* involved a situation where there had been a partial settlement and partial approval of the claim shortly before the expiration of the 90 day period. Also, the political subdivision continued to promise to settle the remainder of the claim up until such time as the suit was filed well after the six month time limit would have expired had the 90 day period not been tolled. This Court held the action was timely filed within six months of the appointed date for negotiations. Here, there was no partial settlement or partial approval of the claim, nor any promise to settle on the part of the County. At the February 1st meeting held during the 90 day period, the County merely requested the appellants' attorney to submit medical documents and other records regarding the claims. Appellants failed to submit the requested records to the County. Shortly thereafter, the County gave notice of denial of the claims to appellants. Consequently, we conclude that *Whitley* is distinguishable from the case before us and is not dispositive.

Regardless of the fact appellants received actual notice of the denial of the claims on March 1st, the attorneys representing appellants were imputed with the knowledge that as of February 11th the claims were denied by operation of law. Title 51 O.S. 1981 § 157 provided:

"Within ninety (90) days after receiving the filing of a claim, the clerk of the political subdivision shall notify the claimant in writing of the approval or denial of the claim. *A claim is denied if the political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the interested parties have reached a settlement* be-

fore the expiration of that period. A person may not initiate a suit against a political subdivision or employee whose conduct gave rise to the claim unless the claim has been denied in whole or in part." (emphasis added).

Upon a literal reading of this statute, the second sentence controls the disposition of the present matter because the clerk of the County did not notify appellants of the approval or denial of their claims within 90 days after receiving the filing of each claim. Each claim was not approved in its entirety within 90 days; therefore, each claim was deemed denied upon the expiration of the 90 day period. Appellants notified appellee of their claims on November 12, 1982, thereby making February 11, 1982, the date the claims were denied by operation of law, the dispositive date in which the statute of limitations had begun to run.

Title 51 O.S. 1981 § 156(C) provided:

"The written notice of claim shall state the time, place and circumstances of the claim and the amount of compensation or other relief demanded. Failure to state either the time, place, circumstances and amount of compensation demanded shall not invalidate the notice unless the claim-ant declines or refuses to furnish such information within ninety (90) days after demand by the political subdivision. *No action for any cause arising under this act shall be maintained unless valid notice has been given and the action is commenced within six (6) months after notification of denial of the claim by the clerk of the political subdivision.* The time for giving written notice of claim does not include the time during which the person injured is unable due to incapacitation from the injury to give such notice, not exceeding ninety (90) days of incapacity." (emphasis added).

It is undisputed that appellants complied with the notice provision of this section. However, they did not comply with the time requirement by which to commence an action. Appellants erroneously contend that March 1st is the dispositive date be-cause, as provided in subsection C, it was

the date of notification of the denial. Al-beit March 1st is the day appellants were actually notified; the language in § 156(C) must be read in conjunction with, and not independent of, § 157. Section 156(C) com-mences the six month limitations period upon notification of denial of the claim by the clerk of the political subdivision; how-ever, as there was no approval or denial of the claims within the mandatory 90 day waiting period, § 157 provides the six month limitations period commences at the expiration of 90 days.

Our interpretation of 51 O.S. 1981 §§ 156(C) and 157 is in accord with this Court's pronouncement in *Neal v. Black-well*, 670 P.2d 587 (Okl.1983). The issue in *Neal* centered around when the six month statute of limitations begins to run under the Political Subdivision Tort Claims Act. Appellant in *Neal* contended that strict compliance with the Tort Claims Act was not required when the County failed to notify the claimant in writing of approval or denial of the claim within 90 days after receiving notice of the claim. This Court disagreed with appellant's construction of § 157. The Court stated: "Since there was no approval of the claim during the 90–day period from [date] ..., the claim was deemed denied as of [date] ... [the expira-tion of this 90 day period] and the statute of limitations of section 156(C), *supra*, be-gan to run." *Id.* at 588.

Similarly, this Court in *Lucas v. Ind. Public School Dist. No. 35*, 674 P.2d 1131 (Okl.1983), gave a "reasonable and sensi-ble" construction to 51 O.S. 1981 §§ 156(C) and 157. *Id.* at 1134. The Court stated that despite the language in § 157 regard-ing notice of denial, if there is no approval of the claim by the political subdivision within 90 days, "the six month limitation of section 156(C) is activated." *Id.* at 1133. Accordingly, given the Court's construction of section 156 in *Lucas*, appellants herein should not have relied on the date the clerk actually gave notice of denial, March 1st, as the date by which the statute of limita-tions begins to run.

From February 11, 1982, appellants in the instant matter had six months in which

to file their lawsuit. Despite any negotiations or "possibilities" of settlement, § 157 on its face, deems a claim denied after 90 days unless the political subdivision approves the claim or the parties have reached a settlement, neither of which is present in this case.

Appellants assert that strict compliance with the statute is not necessary as long as there is substantial compliance citing *Duesterhaus v. City of Edmond,* 634 P.2d 720 (Okl.1981) and *Reirdon v. Wilburton Board of Education,* 611 P.2d 239 (Okl. 1980). Both of these cases pertain to substantial compliance with the notice requirement of 51 O.S. 1981 § 156(B). The present case, on the other hand, involves compliance with the filing requirement of §§ 156(C) and 157. This Court has required more than substantial compliance with the filing requirement and the statute of limitations. *Neal, supra,* and *Lucas, supra.* We believe the statutes should be interpreted to mean that where a person does not hear from a political subdivision either approving or denying a claim within 90 days, the claim is automatically denied. The apparent purpose of this 90 day limit on a political subdivision to either approve or deny a claim is for the benefit of plaintiffs. A political subdivision cannot needlessly delay the filing of a claim by a plaintiff in district court beyond 90 days.

The district court's minute orders sustaining the special demurrers and, as corrected by subsequent orders, dismissing each of the three cases are AFFIRMED.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, SIMMS, and WILSON, JJ., concur.

LAVENDER, J., concurs in result.

OPALA, KAUGER and SUMMERS, JJ., dissent.

1. See footnote 12 *infra* for the pertinent terms of 51 O.S. 1981 § 156(C).

2. The terms of 51 O.S. 1981 § 157 provided: "*Within ninety (90) days after receiving the filing of a claim, the clerk* of the political subdivision *shall notify the claimant in writing of the approval or denial of the claim. A*

OPALA, Justice, with whom KAUGER, Justice, joins, dissenting.

The court pronounces today that in this case the § 156(C)[1] six-month period to bring an action was triggered when the ninety-day time interval provided in 51 O.S. 1981 § 157[2] expired; on that day the plaintiffs' claims were automatically rejected. The court concludes that judgment was properly rendered for the County because the plaintiffs failed to bring suit within six months after their claims stood denied by operation of law.

I can neither accede to today's judgment nor concur in the court's pronouncement. I would hold that the § 157 ninety-day interval was enlarged by the County's continued consideration of the claims as evidenced by its lawyer's rejection letter sent *after* the expiration of the ninety-day period.

### DATES CRITICAL TO THE CONTROVERSY

The harm in contest occurred October 23, 1981; written notice of the claims was timely mailed to the Clerk of Johnston County on *November 12, 1981.*[3]

The County's January 25, 1982 letter requested the plaintiffs' attendance at a County Commissioners' meeting on February 1, 1982. At this meeting the district attorney asked plaintiffs' counsel to submit certain medical documents and information concerning the claims. On *March 1, 1982* the County notified the plaintiffs by letter that their claims were denied. The plaintiffs' brought individual actions against the County on *August 25, 1982.*

The court today rules that the § 156(C) six-month time limit commenced running on February 11, 1982—when the ninety-day period expired—and not on March 1, 1982 when the claims were rejected by letter of "notification". I would hold that the

*claim is denied if* the political subdivision *fails to approve the claim in its entirety within ninety (90) days,* unless the interested parties have reached a settlement before the expiration of that period...." [Emphasis added.]

3. The County admits its timely receipt of the notice.

§ 156(C) six-month interval began when the County's letter of the claims' rejection was sent to the plaintiffs' lawyer.

## I

## THE TWO CRITICAL TIME BARS IN THE POLITICAL SUBDIVISION TORT CLAIMS ACT ARE DISTINCT IN THEIR LEGAL CHARACTERISTICS

The Political Subdivision Tort Claims Act [Act][4] *in force at the time* of plaintiffs' injurious event[5] provided in 51 O.S.1981 § 156(B)[6] and (C)[7] and in § 157[8] two conceptually distinct time bars.[9]

The terms of § 156(B) and (C) clearly evinced legislative intent to bar the *right to recover* under the Act unless notice has been given to the governmental tortfeasor and the action is commenced within six months after notification of the claim's rejection. The two time limits in § 156(B) and (C) clearly constitute a condition on the exercise of the claimant's *right* and hence form a substantive element of the claim. The terms of § 157, on the other hand, *affect only the remedy.* Because the latter provisions prescribe a ninety-day interval during which *no* suit may be filed, they are more aptly characterized as a "negative statute of limitation"—a lapse of time that does not bring about the loss of a right and may hence be extended by tolling, waiver or estoppel.[10]

Here, the § 156(B) time limit that operated upon the right was met; the governmental subdivision did receive a timely notice of the plaintiffs' claims. *Only the § 157 interval which affects the remedy is implicated in the controversy before us now.* Like other statutes of limitation, the § 157 time bar *can be tolled* by the obligor's conduct. It was clearly tolled here by the March 1, 1982 notification recognizing that the County had kept the claims under its consideration in an unrejected status *beyond* the statutory ninety-day interval for their allowance or denial.

## II

## THE DATE OF THE WRITTEN DENIAL IS THE § 156(C) "NOTIFICATION" THAT MARKS THE BEGINNING OF THE SIX–MONTH PERIOD TO BRING AN ACTION

Although the *beginning* of the § 156(C) interval to bring suit doubtless was designed to *end* the § 157 period during

4. 51 O.S. 1981 §§ 151 et seq.

5. The Political Subdivision Tort Claims Act under consideration in this case was replaced by The Governmental Tort Claims Act (Okl.Sess. Laws 1984, Ch. 226, eff. October 1, 1985), 51 O.S.Supp.1984 §§ 151 et seq.

6. The terms of 51 O.S. 1981 § 156(B) provided: "A claim against a political subdivision or employee shall be forever barred unless *notice* thereof *is filed with the clerk* of the governing body of the political subdivision *within one hundred twenty (120) days after the loss occurs.*" [Emphasis added.]

7. For the pertinent text of 51 O.S. 1981 § 156(C) see footnote 12 *infra.*

8. For the pertinent text of 51 O.S. 1981 § 157 see footnote 2 *supra.*

9. The common law tradition recognizes two distinct classes of loss-dealing time lapse: (1) statutes of limitation which extinguish only the remedy and (2) time bars that extinguish both the remedy and the right. *Baccus v. Banks,* 199 Okl. 647, 192 P.2d 683, 691 [1948], appeal dism.

*Reeder v. Banks,* 333 U.S. 858, 68 S.Ct. 743, 92 L.Ed. 1138, reh.den. 333 U.S. 883, 68 S.Ct. 911, 92 L.Ed. 1158 [1948]. The one-hundred-twenty-day time bar found in § 156(B) and the six-month bar of § 156(C) are distinct from yet another time limit of ninety days in § 157. The former two time bars condition the right to claim recovery; they can neither be tolled by conduct nor extended by estoppel. See *Pinson v. Robertson,* 197 Okl. 419, 172 P.2d 625, 627 [1946]; *Saak v. Hicks,* Okl., 321 P.2d 425, 429 [1958] and *Hiskett v. Wells,* Okl., 351 P.2d 300, 304 [1960]. The ninety-day limit in § 157, on the other hand, is but an "ordinary" or "true" statute of limitations that is couched in a negative form; the § 157 limit is, of course, subject to both tolling and estoppel. See *Phillips Petroleum Company v. United States Fidel. & G. Co.,* Okl., 442 P.2d 303, 305 [1968]; *Trinity Broadcasting Corp. v. Leeco Oil Co.,* Okl., 692 P.2d 1364, 1367 [1984] and *Whitley v. Oologah S.D. I–4 of Rogers Cty.,* Okl., 741 P.2d 455, 458 [1987] (Opala, J., concurring).

10. *Whitley v. Oologah S.D. I–4 of Rogers Cty.,* (Opala, J., concurring), *supra* note 9 at 458.

which no action may be filed,[11] the commencement date of the § 156(C) six-month limit need not coincide with the ninetieth day after notice of claim is received. If rejection comes earlier than ninety days after notice, the limit is triggered *sooner;* and it will start *later* when, as here, the "notification" prescribed by § 156(C) for the claim's denial occurs after the ninetieth day. *Nothing in the statute either prohibits or renders nugatory a claim's written denial that takes place after the lapse of ninety days.* In short, one whose notice has met with the subdivision's silence for ninety days is set free to sue at once; but if silence happens to be broken by a later denial in writing, the "tardy" rejection may not be deemed legally inefficacious to trigger for the claim the § 156(C) six-month time limit that is intended to run from the *"notification* of denial of the claim" [emphasis added], rather than from the end of an antecedent ninety-day silence.[12]

I would hold that the expiration of the ninety-day period *will not* automatically trigger the commencement of a six-month time limit where, as in the present case, the defending entity unequivocally indicates by letter sent *after* the expiration of the ninetieth day that the claim stood under active consideration and conscious recognition for a period beyond the § 157 limit. The date of the tortfeasor's *actual rejection notice by letter* must control over the *automatic statutory cutoff* as the point of "notification" in the sense that word is used in § 156(C).

Because the County's *March 1st* letter clearly indicates the County acted on the claims *after* the § 157 period had lapsed, I would hold today that the ninety-day interval stood enlarged and that the date of the letter—March 1, 1982—operated as the beginning of the six-month period to bring an action against the County. The plaintiffs'

August 25, 1982 lawsuits were hence timely commenced.

SUMMERS, Justice, dissenting.

Relying on existing caselaw the court allows 51 O.S. 1981 § 157 to provide the controlling statute of limitations. As I read that section it tells us *when* a claim is deemed denied by inaction, and that, according to the statute, occurs ninety (90) days after the claim has been filed. In this case the claim was denied by operation of law on February 11, 1982. The section by its terms appears to have nothing to do with when the plaintiff must file.

The section that tells the plaintiff by when he must commence his suit or have it forever barred is found in 51 O.S. 1981 § 156(C), which says:

"No action for any cause arising under this act shall be maintained unless ... the action is commenced within six (6) months after notification of denial of the claim by the clerk of the political subdivision."

If the legislature had intended the right of action to lapse six (6) months after the claim was denied it would have been easy enough to have had the statute so provide. Since the legislature did not write it that way, and since the suit was filed on August 25, *within* six (6) months after "notification of denial of the claim by the clerk of the political subdivision" on March 1, 1982 it was statutorily filed.

Out of deference to the legislature we should reinstate plaintiffs' suit, retracting and overruling all language in *Neal v. Blackwell* and *Lucas v. Ind. Public Schools Dist. 35,* both supra, contrary to 51 O.S. 1981 § 156(C).

I am authorized to advise that Justice KAUGER joins in these sentiments and

---

**11.** The last sentence in 51 O.S. 1981 § 157 provided in pertinent part that *"[a] person may not initiate a suit ...* unless the claim has been denied in whole or in part." [Emphasis added.] This provision, establishing a waiting period during which no litigation may be brought, is more aptly defined as a "negative statute of limitation". It lays down a time span within which *no* action is to be commenced. See

*Whitley v. Oologah S.D. I–4 of Rogers Cty.,* (Opala, J., concurring), *supra* note 9 at 458.

**12.** The pertinent terms of 51 O.S. 1981 § 156(C) provided that "[n]o action ... shall be maintained unless ... [it] is *commenced six (6) months after notification* of denial of the claim ..." [Emphasis added.]

that Justice OPALA would join in the result.