Keith PATTERSON, Appellant,

v.

TOWN of MULDROW, Oklahoma, Appellee.

No. 80524.

Court of Appeals of Oklahoma, Division No. 4.

Nov. 2, 1993.

James H. Abrams, Jr., Albert R. Matthews, Bonds, Matthews, Bonds & Hayes, Muskogee, for appellant.

C. Bart Fite, Wright, Stout & Fite, Muskogee, for appellee.

STUBBLEFIELD, Judge.

The issue herein is whether an action filed against a city was timely brought when filed within one hundred eighty days of when a claim was deemed denied but more than one hundred eighty days after the claim was purportedly denied without notice to the plaintiff.

On December 16, 1991, Plaintiff Keith Patterson filed his petition seeking damages from Defendant City of Muldrow, alleging that on February 1, 1991, he had sustained physical and emotional injury during an arrest by City's police officers. City filed a motion to dismiss maintaining that Plaintiff had failed to timely file his action pursuant to the provisions of the Governmental Tort Claims Act, 51 O.S.1991 §§ 151–172. City asserted that (1) it had received Plaintiff's "Notice of Tort Claim" on April 30, 1991; (2) the claim had been presented to the "Town Board of Trustees" on May 9, 1991, and denied at that time; and, (3) Plaintiff had failed to file his action within the statutorily mandated "one hundred eighty (180) days after denial of the claim" as required by 51 O.S.1991 § 157(B).

The trial court found that, indeed, Plaintiff had not been given adequate notice of City's denial of his claim, but that notice of denial was not necessary "under the laws of the State of Oklahoma and *Andrews v. Independent School District No. 29*, 737 P.2d 929 (Okla.1987)." Plaintiff appeals from the trial court's order sustaining City's motion to dismiss.

Plaintiff first asserts that the trial court erred in dismissing his cause because it had been timely filed pursuant to the Governmental Tort Claims Act. Plaintiff states: "The central question regarding the Governmental Tort Claims Act ... is whether or not a claimant is entitled to rely on the automatic denial provisions of the *Act.*" The simple answer, of course, is that both the claimant and the governmental entity are entitled to rely upon all provisions of the Act.

The provisions of the Act are clearly written:

A claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the interested parties have reached a settlement before the expiration of that period. A person *may not initiate a suit against the state* or a political subdivision *unless the claim has been denied in whole or in part.* The claimant and the state or political subdivision may continue attempts to settle a claim, *however, settlement negotiations do not extend the date of denial.*

Section 157(A) (emphasis added). From a clear wording of that statute, a suit against a state or political subdivision would be premature if filed prior to the *denial* of the claim. Thus, a plain reading of that subsection makes it clear that Plaintiff could not have commenced his action until the claim had either been denied *or* "deemed denied" ninety days after filing—whichever comes first.

On the other hand, without the "deemed" denial ninety days after filing, a claimant's action could be held in abeyance indefinitely while being considered by the respondent entity. With the deemed denial, a claimant knows a given date after the claim has been filed when he can bring his lawsuit. Therefore, a claimant has the safeguards of a timely resolution of his claim or action.

Likewise, section 157(B) protects the governmental entity from delays in a claimant's pursuit of his action for damages under the Act. Section 157(B) provides:

No action for any cause arising under this act ... shall be maintained unless valid notice [section 156] has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in [section 157(A)].

That latter reference to denial likewise refers to the actual denial and the deemed denial.

Citing *Trent v. Board of Commissioners of Johnston County*, 755 P.2d 615 (Okla.1988), and *Whitley v. Oologah Independent School District, 1-4 of Rogers County*, 741 P.2d 455 (Okla.1987), the court in *Lasiter v. City of Moore*, 802 P.2d 1292, 1293 (Okla.Ct.App. 1990), stated: "The filing of litigation within 180 days is pursuant to § 157(B), a condition precedent and an essential element of any right to a cause of action against a municipality." The *Trent* court stated unequivocally: "*On its face*, § 157 provides for the automatic denial of a claim after 90 days *if it has not been denied, approved or settled at an earlier date.*" 755 P.2d at 617 (emphasis added). Thus, it is clearly the denial of the claim that starts the one hundred eighty days limitation period running, whether that be an actual denial or a "deemed" denial.

Prior to 1985, the clerk of the political subdivision was required to notify the claimant of the denial of his/her claim. In that year, legislative changes deleted the notice provision. Legislative comments noted that county commissioners have regular meetings and conduct official business at those meetings and are required to post a notice of agenda and to publish proceedings in a news-

paper of general circulation. Thus, the legislature put much of the burden of following the progress of a claim upon the claimant based upon the existence of public notices upon which the claimant could rely. The court in *Hart v. Board of County Commissioners,* 842 P.2d 777 (Okla.Ct.App.1992), relied upon that legislative change in affirming the dismissal of an action that had been actually denied more that one hundred eighty days prior to filing.

Thus, the burden of keeping up with a claim does rest with the claimant. However, it was not totally dispositive in *Hart* that the governing body of a political subdivision actually denied a claim more than one hundred eighty days before the lawsuit thereon was filed, because *some* degree of notice to a claimant was given. At a minimum, the claimant must be able to tell from public notices and agendas that his claim is to be, or has been, decided. Accordingly, the governing body may not act in secret to deny a claim and then rely upon that denial to render a subsequent lawsuit untimely.

Here, City claims that it formally denied the claim on May 9, 1991. City did not notify Plaintiff of that fact. City apparently did post an agenda for the May 9 meeting, but that purported notice did not indicate that any claim was to be considered. Item 9 on the agenda specified "POLICE DEPARTMENT: REPORT BY CHIEF ROGER FULLER," and it was this agenda item that City contended dealt with Plaintiff's claim. However, such notice does not name Plaintiff nor does it state that any claim will be considered. It simply does not put a reasonable person upon notice that Plaintiff's claim would be considered.

The case upon which the trial court relied, *Andrews v. Independent School District No. 29,* 737 P.2d 929 (Okla.1987), addresses the sufficiency of notice to meet the requirements of the Oklahoma Open Meeting Act. 25 O.S.1991 §§ 301–314. The *Andrews* court noted that "[s]ection 303 requires [the gov-ernmental entity] to provide advance public notice specifying the time and place of the meetings, as well as the subject matter or matters to be discussed at the meeting." *Id.* at 930. The *Andrews* court quoted from *Haworth Board of Education of Independent School District, I–6 v. Havens,* 637 P.2d 902, 904 (Okla.Ct.App.1981), as follows, in addressing what is required of an agenda, which shall "be worded in plain language, directly stating the purpose of the meeting ... [and] the language used should be simple, direct and comprehensible to a person of ordinary education and intelligence." 737 P.2d at 931.

We find that the legislative removal of the "notice to claimant" provision of section 157 and the holding in *Hart,* 842 P.2d 777, are based upon the public notice provisions regarding official meetings and actions of the governing bodies of political subdivisions. A claimant, indeed the world, is notified by such public notices of the fact that a matter will be or has been considered by the governing body. However, if an official agenda of such a governing body, in fact, does not apprise the ordinary person of such pending action, it is no notice at all to a claimant.

Herein, the agenda did not list any item that could reasonably be thought to be Plaintiff's claim. Nor did City contend that there were written minutes of the meeting from which Plaintiff could have ascertained that City had addressed his claim. Thus, Plaintiff had no way of knowing of the disposition of his claim or, indeed, that it had ever been considered unless he attended *every* meeting of the governing body in the off-chance that some action might be taken. We do not find that section 157 imposes such an absurd requirement.

Where there was no actual notice and City's actions were not reasonably calculated to give *public* notice, City's May 9, 1991, action on the claim was invalid and Plaintiff could reasonably rely upon the "deemed denied" provision in section 157. We find that Plaintiff's action filed within one hundred eighty days of that time constituted a timely filing.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

TAYLOR, P.J., concurs.

BRIGHTMIRE, J., concurs in result.

BRIGHTMIRE, Judge, concurring in result.

I concur in the result reached by the majority but I cannot agree that notice by publication, or posting in a public place of a city activity agenda relating to the denial of a tort claim, satisfies the fundamental due process requirements of the federal or state constitutions.

Lack of due process may be raised for the first time on appeal. *Pettit v. American Nat'l Bank of Austin,* 649 P.2d 525 (Okl. 1982). At stake in this case is the statutory right of a citizen to seek redress for tortious injury inflicted by the government—in this case a municipality. The Governmental Tort Claims Act, 51 O.S.1991 and Supp.1992 §§ 151 through 172, creates a liberty interest entitling an injured victim to due process protection while in pursuit of a remedy granted by the Act. *Phillips v. Williams,* 608 P.2d 1131 (Okl.1980), *cert. denied,* 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980).

Here the city advocates a construction of the Act which, in my opinion, was not intended by the legislature. The effect of this is to unfairly and arbitrarily ensnare an unwary tort victim which in essence deprives him of "substantive due process of law." It is settled law in this state that all governmental actions are required to have a fair and reasonable impact on the life, liberty or property of the person affected. In other words, arbitrary action is proscribed. *City of Edmond v. Wakefield,* 537 P.2d 1211 (Okl.1975).

Our constitutional due process and equal protection clauses are designed to protect citizens against arbitrary acts of the state and secure to all persons equal and impartial justice. *Umholtz v. City of Tulsa,* 565 P.2d 15 (Okl.1977).

I can understand the "actual denial," "deemed denial" distinction well enough.

But what I cannot understand or agree with is the city's position that if and when it does act on a tort claim, it is not obliged to give the claimant actual notice of a time-triggering denial by means reasonably assured of apprising the claimant of such action, thus affording him an opportunity to file suit and be heard.

Finally, it is my opinion that this is what the legislature really intended and that the composition of § 157(A) and (B) resulted in an unintended notice hiatus. The object was not to lay a trap for an unwary claimant but to eliminate those created by a governmental entity's failure to timely act.

For these reasons, I would hold that when the government denies a claim, it is obliged to give the claimant timely actual notice in a manner reasonably calculated to reach him so that he has a fair opportunity to have his claim heard by a court. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).