CITY OF TULSA v. MACURA.

*100 P. 2d 269.*

No. 29358.   Jan. 16, 1940.

Rehearing Denied March 19, 1940.

H. O. Bland, Milton W. Hardy, E. M. Gallaher, and M. S. Williams, all of Tulsa, for plaintiff in error.

Bailey E. Bell and Henry M. Gray, both of Tulsa, for defendant in error.

DANNER, J. The city of Tulsa appeals from a judgment based on a jury verdict in favor of Dolly Macura in her action against the defendant city for damages for injuries sustained by reason of alleged negligence of the defendant to maintain a sidewalk in a reasonably safe condition for public use.

It is alleged in the petition, and the proof shows, substantially the following facts: That on the 21st day of May, 1937, the date of the injury complained of, the defendant maintained a concrete sidewalk in the 400 block along the east side of Boston avenue, which extends north and south through the city; that shade trees of good size, with heavy foliage during the spring and summer months, lined the parkway along the street adjacent to the sidewalk. That no street lights were maintained in the immediate vicinity where the injury occurred and only intermittent lighting from residences and a few business houses located in the block reached the place where the injury occurred. That on the night of the accident weather conditions added to the darkened condition of the walk along which the plaintiff and her husband were traveling home from work about 10 o'clock in the evening. That at the place of the accident there was a defect in the sidewalk consisting of cracked, broken, and worn portions of the cement extending across the width of the walk, and at the place of the injury there was a hole about a foot long, six inches wide, and five inches deep. That plaintiff stepped into the hole with her entire left foot, resulting in her being thrown sideways to the walk; her foot remaining incased in the shoe in the depression in the sidewalk. In the fall the heel was torn loose from the shoe and was recovered later from the hole into which the plaintiff stepped. As a result of the accident the plaintiff complains of injuries to her left arm and side, spinal column, bruised, torn, and strained ligaments, from the effects of which injuries she has not recovered.

Among the grounds urged for the avoidance of the judgment is the failure of the plaintiff to prove compliance with article 11, paragraph 9, of the city charter of Tulsa, which provides:

*"Before the city of Tulsa shall be liable for damages of any kind the person injured, or some one in his behalf, shall give the mayor or city auditor notice in writing of such injury within thirty days after the same has been received, stating specifically in such notice when, where and how the injury occurred and the extent thereof.* The city of Tulsa shall never be liable on account of any damage or injury to person or property arising from or occasioned by any defect in any public street, highway or grounds, or any public work on the city, unless the specific defect causing the damage or injury shall have been actually known to the mayor or city engineer by personal inspection for a period of at least twenty-four hours prior to the occurrence of the injury or damage, unless the attention of the mayor or city engineer shall have been called thereto by notice thereof in writing at least twenty-four hours prior to the occurrence of the injury or damage and proper diligence has not been used to rectify the defect after actually known or called to the attention of the mayor or city engineer as aforesaid."

Like Banquo's ghost, or the proverbial cat with many lives, this charter provision, in one form or another, returns to this court for observation. Following a long line of prior decisions, and for the reasons therein expressed, we again declare the provision null and void. City of Tulsa v. Wells, 79 Okla. 39, 191 P. 186; City of Tulsa v. Whittenhall, 140 Okla. 160, 282 P. 322; City of Tulsa v. McIntosh, 141 Okla. 220, 284 P. 875; City of Tulsa v. Adams, 151 Okla. 165, 3 P. 2d 155.

The defendant contends that the court erred in refusing to admit in evidence X-rays taken of plaintiff a few days after the accident. The pictures were offered in evidence by the defendant in connection with the testimony of Dr. Morris Lhevine, an X-ray specialist, and Dr. O. C. Armstrong, plaintiff's physician. The proffered evidence was excluded on the ground of insufficient identification of the photographs. We consider it unnecessary to pass upon the sufficiency of identification. The X-ray pictures were taken of plaintiff's pelvis and back, only; the purpose of the examination being, so Dr. Armstrong testified, to discover if there was any injury to the bones. The evidence presented on behalf of the plaintiff, medical and otherwise, does not disclose any bone injury except to the wrist, which was not photographed or shown in the X-ray pictures. Dr. D. W. Dixon, who examined the plaintiff first on January 4, 1938, described her injuries as follows:

"A. She was suffering with a sprain, tenderness in the lumbar and sacral region, or in the small of her back, and a deformity of the right wrist, due to a fracture. The sprain in her back had involved the soft tissues and ligaments along the spinal column and had become chronic, it had not improved in the last two months, she had told me she was unable to do her housework and in fact was unable to bend her back the slightest without pain. The deformity in the wrist is permanent, produced pain, and it is my opinion she is suffering with focal infection. She has a condition of her female organs, that

are dropped, she has what is called frequent urination, that is, she has to get up at night to urinate, and she complained considerably of trouble in her ankle, seems as if it had been sprained, though there were no symptoms at the time I examined her. * * *

"The wrist is way off, it is not in line with the hand and the hand is not in line with the wrist, fracture of the radius in the arm. There is the arm out of line. Being at an angle, it has weakened the muscles, or weakened, due to the fact that they had, in fact, to make way for the angle deformity; in other words, when she bends her wrist, the bones don't articulate smoothly, due to the fact they are misplaced, it will always leave a deformity and weakened condition."

According to the testimony of Dr. Armstrong, defendant's witness, the injuries complained of by the plaintiff would not appear in the excluded X-ray pictures. In this situation we are unable to discern any injury to the defendant by reason of the exclusion of the proffered evidence.

On the trial the defendant offered to prove by the testimony of its assistant city engineer that repairs of the sidewalk could not have been made on account of lack of available funds; that the laws providing for the creation of funds for this purpose were ineffectual for the reason that contractors were unwilling to accept tax warrants, or claims issued in payment of repairs. The defendant justifies its argument on this point by citing the case of Town of Fairfax v. Giraud, 35 Okla. 659, 141 P. 159. The entire law on the point, enunciated by this court in the cited case, in the syllabus, reads:

"A municipality is relieved of liability for the defective condition of its streets only when it has no means within its control to effect repairs. But, if it has the means within its control and fails or refuses to exercise them, it will not be excused or relieved of liability."

The contention of the defendant receives no encouragement from the case relied upon. Therein it is suggested that the repairs might have been made by a

few shovels of dirt and the exercise of a minimum amount of elbow grease. While we do not feel called upon to recommend so primitive a method of making needful repairs, we are, however, in full accord with the legal conclusion of the trial court in excluding the proffered evidence.

In this state the general rule is so well established as to obviate the citing of authorities: That it is incumbent upon a municipal corporation to use ordinary care and diligence in constructing and keeping its streets and sidewalks in a reasonably safe condition for public use, and if it fails to do so, it is guilty of negligence, rendering it liable for injuries resulting from such negligence, if the injured party exercised ordinary care to avoid the injury.

In the present case the proof shows that the defect in the sidewalk had existed for a long period of time prior to the date of the accident. In the face of the record it cannot reasonably be claimed that the defect was trivial and of a minor nature. The extent of the defect might have been discovered by the use of ordinary care on the part of the city.

The defendant asserts that the testimony of repairs of the sidewalk subsequent to the injury was wrongfully received in evidence. We have examined the record on this point, and conclude that in view of what transpired, the contention is not well founded. On cross-examination of the plaintiff questions were asked and answers given as follows:

"Q. Do you remember, Mrs. Macura, of ever going out on this 400 block on North Boston, with a lawyer and looking at that sidewalk? A. Yes, sir, but I believe that was a long time after. It was after I had entered a suit. Q. After you had entered a suit and you had some difficulty with that lawyer out there, in indicating the spot where you fell, didn't you? A. No, sir. Q. You did not? A. No, sir. Q. But that was long after you had actually entered the suit, in December of 1937? A. Yes, sir."

On redirect examination, in explaining her visit to the scene of the accident, and the reason therefor, the plaintiff, irresponsive to question by counsel, stated that the sidewalk had been fixed or changed since the date of the injury. The whole controversy on the point seems to have arisen over the location of the place of the accident and a description of the condition of the walk as it existed at the time of the injury. Under the circumstances we consider the evidence harmless. City of Cushing v. Bowdlear, 74 Okla. 138, 177 P. 561.

Under the fourth proposition the defendant argues that the plaintiff's attorney was guilty of misconduct in his closing argument which prevented it from having a fair trial. The record relative thereto shows:

"Mr. Bell: Let the record show, as counsel, Bailey E. Bell, in the closing argument, made this statement: That he asked the jury not to render a little verdict in this case, if they thought the plaintiff was entitled to recover, for the purpose of evading an appeal; that it was apparent from the record that an appeal would be taken in this case. Mr. Gallaher: Let the record also show the defendant, city of Tulsa, objects to such argument and moves for a mistrial on the ground and for the reason that such argument is unauthorized by any principle of law and any evidence which has been adduced before this court. The Court: The objection to the argument is well taken and sustained and the jury is instructed to disregard the argument of counsel and it is stricken. It is improper argument, not based on any law in the case. The motion for a mistrial will be overruled. Mr. Gallaher: Give me an exception, and I say it is a proper statement of the law."

The practice of attorneys in the trial of a cause making "side bar" remarks in the presence of, or to the jury, cannot be too strongly condemned. It is unfair and constitutes a breach of the fine attributes which govern the members of the bar, generally. In the present case, however, in view of the entire record, we are of the opinion that the

rights of the defendant were not prejudiced by the remarks of counsel. Sinclair Oil & Gas Co. et al. v. Crane, 175 Okla. 198, 51 P. 2d 711; Prudential Insurance Co. v. Tidwell, 163 Okla. 39, 21 P. 2d 28; Mid-Continent Petroleum Corp. v. Lunger, 161 Okla. 266, 18 P. 2d 547. Furthermore, the fact that the plaintiff sued for $29,000.60 and recovered judgment on a verdict for $2,000 indicates quite clearly that the remarks complained of had no appreciable weight with the jury.

Finally, it is asserted by the defendant that in any event the judgment should be modified to the extent of disallowing costs of the action on account of absence of proof that claim was filed with the city prior to the filing of the action as provided for in section 6412, O. S. 1931, 11 Okla. St. Ann. § 674, which provides:

"All claims against the city must be presented in writing, with a full account of the items, and verified by the oath of the claimant, or his agent, that the same is correct, reasonable and just, and no claim or demand shall be audited or allowed, unless presented and verified, as provided for in this section: provided, that no costs shall be recovered against such city, in any action brought against it, for any unliquidated claim, which has not been presented to the city council to be audited, nor upon claims allowed in part unless the recovery shall be for a greater sum than the amount allowed with the interest due: And provided, further, that no action shall be maintained against such city, in exercising or failure to exercise, any corporate power or authority in any case where such action would not lie against a private individual under like circumstances. (R. L. 1910, § 603.)"

We are of the opinion that the point presented was not sufficiently raised in the trial court. If, in fact, costs were erroneously assessed against the defendant, the matter may again be presented to the trial court on a motion to retax costs. In City of Kingfisher v. Zalabak, 77 Okla. 108, 186 P. 936, we held:

"It is also urged that the court erred in rendering judgment against the defendant for costs for the reason that plaintiff did not file a claim against the city as provided by section 603, Revised Laws of 1910. This is not a ground for reversal and inasmuch as the matter was not presented to the trial court and it given an opportunity to rule thereon, the alleged error will not be considered here. If, in fact, the costs were erroneously assessed against the defendant, the matter may be presented to the trial court on a motion to retax."

Under the authority of the above case, upon receipt of mandate the district court has the authority to hear and determine application to retax the costs.

The judgment of the trial court is affirmed.

BAYLESS, C. J., and RILEY, GIBSON, and HURST, JJ., concur.