**Harry CRUSE and Maude Cruse, Appellants,**

v.

**BOARD OF COUNTY COMMISSIONERS OF ATOKA COUNTY, Oklahoma, Appellee.**

**No. 81733.**

Supreme Court of Oklahoma.

Dec. 19, 1995.

Rehearing Denied Jan. 18, 1996.

Joey Chiaf, Chiaf & Chiaf, Oklahoma City, Oklahoma, Neil Whittington, Atoka, Oklahoma, for appellants.

Theresa McGehee, District Attorney, Jeff Mixon, Assistant District Attorney, Durant, Oklahoma, for appellee.

ALMA WILSON, Chief Justice:

■ The issue presented is whether a timely filed governmental tort claims action may be refiled pursuant to 12 O.S.1991, § 100. We hold that 12 O.S.1991, § 100 operates to allow the refiling of a timely-filed governmental tort claims action within one year from the date the governmental tort claims action failed other than on its merits. We further find that this case must be remanded for the district court to determine whether the action is barred by 51 O.S.1991, § 155(8).

On May 6, 1990, the appellant, Harry Cruse, drove his automobile into a washout on a county road in Atoka County, Oklahoma, resulting in personal and property injury. On May 15, 1990, the appellants (Cruse) mailed a notice of claim for damages arising out of the May 6th incident to the Board of County Commissioners of Atoka County (Board). The notice was received by the Atoka County Clerk on May 16, 1990. The Board did not act upon the claim and it was deemed denied on August 14, 1990.

On January 10, 1991, Cruse timely filed a governmental tort claims action in the district court of Atoka County against the Board, alleging that the Board failed to adequately: 1) maintain the road, 2) manage the drainage around the road, 3) discover the washout area, and 4) warn drivers of the washout. In its answer, the Board denied the negligence allegations and alleged that any defect in the county road was due to weather conditions for which the Board is not liable pursuant to 51 O.S.1991, § 155(8). On February 18, 1992, the Board filed a motion for summary judgment asserting sovereign immunity pursuant to the exemption in

§ 155(8). On March 4, 1992, prior to a ruling on summary judgment Cruse dismissed the action without prejudice to refiling.

On January 19, 1993, Cruse refiled the governmental tort claims action against the Board in the district court of Atoka County. The Board filed a motion to dismiss contending that 12 O.S.1991, § 100 does not apply to a governmental tort claims action to allow refiling of the action after the expiration of the 180–day time period specified in 51 O.S.1991, § 157(B). The district court dismissed the action. The Court of Appeals affirmed the dismissal, relying upon 51 O.S.1991, §§ 157 and 170 and *Johns v. Wynnewood School Board of Education,* 656 P.2d 248 (Okla.1982). We previously granted certiorari.

Cruse contends that the right to maintain this action was preserved upon timely compliance with the provisions of 51 O.S.1991, §§ 156 and 157; that 51 O.S.1991, § 164 expressly subjects a timely-filed governmental tort claims actions to all Oklahoma civil procedure law; and, the Governmental Tort Claims Act does not expressly preclude application of 12 O.S.1991, § 100 to allow refiling. The Board contends that the trial court lacked subject matter jurisdiction because the refiled action was not filed within 180 days after the claim was deemed denied under § 157; that the Governmental Tort Claims Act creates the right to file an action and the 180–day time limitation is a condition upon that right; and, that failure to fulfill the condition extinguishes the right.[1]

Title 12 O.S.1991, § 100 operates to allow the refiling of common law[2] and statutory actions.[3] 12 O.S.1991, § 100, provides:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, or, if he should die, and the cause of action survive, his representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

Prior to enactment of the Governmental Tort Claims Act,[4] § 100 operated to allow the refiling of an action against a governmental entity outside the applicable time limitation. In *Valley Vista Development Corporation, Inc. v. City of Broken Arrow,*[5] this Court determined that § 100 operated to allow the refiling of a contract action against a municipality. The original action had failed because the plaintiff did not present evidence relating to the city's budget and debt limitations as required by statute to vest the court with authority to render a money judgment against the municipality. *Valley Vista* concluded that the failure of an action because the court lacked authority to render a judgment against a municipality constituted a failure otherwise than on the merits within the unambiguous provisions of § 100.[6] In *Herwig v. City of Guthrie,*[7] the Court held that § 100 operates to allow the refiling of a nuisance case against the municipality, where the timely-filed action was dismissed without prejudice and refiled after the initial statute of limitations had expired. In *City of Tulsa*

1. Few states have addressed the issue of whether a governmental tort claims action may be refiled pursuant to a statute similar to 12 O.S.1991, § 100. Ohio and Wisconsin have answered in the affirmative. *Reese v. Ohio State University Hospitals,* 6 Ohio St.3d 162, 451 N.E.2d 1196 (1983); and, *Colby v. Columbia County,* 192 Wis.2d 397, 531 N.W.2d 404 (1995). Tennessee has answered in the negative. *Eason v. Memphis Light, Gas & Water Division of the City of Memphis,* 866 S.W.2d 952 (Tenn.App.1993).

2. *Pinson v. Robertson,* 197 Okla. 419, 172 P.2d 625 (1946).

3. *Amsden v. Johnson,* 74 Okla. 295, 158 P. 1148 (1916), an action to enforce a mechanic's lien;

and, *Rock Island Mining Co. v. Allen,* 106 Okla. 188, 233 P. 1060 (1924), a wrongful death action.

4. §§ 151, et seq. of Title 51 of the Oklahoma Statutes.

5. 766 P.2d 344 (Okla.1988).

6. See, *Ross v. Kelsey Hayes, Inc.,* 825 P.2d 1273, 1277 (Okla.1991), which concluded that "The language of § 100 is unambiguous in stating the actions to which it applies—'any action commenced within due time.'"

7. 182 Okla. 599, 78 P.2d 793 (1938).

*v. Myrick*,[8] § 100 operated to allow the refiling of an action to recover damages suffered when the plaintiff fell into an excavation in one of the city streets.

■ The remedial nature and liberal application of § 100 [9] was part of our law when the Political Subdivision Tort Claims Act was enacted.[10] Section 14 of the Political Subdivision Tort Claims Act, provided that the laws and statutes of the State of Oklahoma shall apply and govern all actions brought under the act to the extent that the laws are not inconsistent with the provisions of the act.[11] A plain reading of § 14, codified at § 164, is that § 100, would apply to a tort action against a political subdivision.[12] Application of § 100 to tort actions against a political subdivision is supported by the reasoning in *Conway v. Ohio Casualty Insurance Company*,[13] finding that § 164 is authority for application of 12 O.S.1981, § 323.[14]

The Political Subdivision Tort Claims Act was amended and became the Governmental Tort Claims Act.[15] Unchanged, 51 O.S.Supp. 1978, § 164, was left intact as a part of the Governmental Tort Claims Act. There were no provisions in the Political Subdivision Tort Claims Act, nor are there any in the Governmental Tort Claims Act, which expressly proscribe application of § 100 to a governmental tort claims action. Accordingly, § 100 is applicable to a governmental tort claims actions unless its application is inconsistent with our construction of the Governmental Tort Claims Act.

When this Court repudiated the common law doctrine of sovereign immunity as a bar to governmental tort claims effective as to claims or causes of action accruing after 12:01 a.m., October 1, 1985,[16] the Legislature enacted the Governmental Tort Claims Act.[17] The Governmental Tort Claims Act adopted the common law doctrine of sovereign immunity and then partially waived the immunity, providing: first, "The State of Oklahoma does hereby adopt the doctrine of sovereign immunity(.)" [18] and then, "The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions." [19] The doctrine of sovereign immunity embodied the "concept that the courts were a part of government and could not be used to enforce claims against the government without the express permission of the government." [20] The Governmental Tort Claims Act expressly withholds consent to judicial enforcement of tort claims against the government, state or local, and then expressly consents to judicial enforce-

---

**8.** 184 Okla. 229, 86 P.2d 623 (1939).

**9.** In *Valley Vista Development Corporation, Inc. v. City of Broken Arrow*, 766 P.2d at 349 (Okla. 1988), we said whether referred to as a savings provision, renewal statute, or recommencement provision, the purpose of 12 O.S.1981, § 100 is to avoid the harsh results flowing from the general rule that where an action failed and the statute of limitations had expired during the interim, any subsequent action was untimely; therefore it is a remedial statute and it provisions are to be liberally applied.

**10.** 1978 Okla.Sess.Laws, ch. 203.

**11.** 1978 Okla.Sess.Laws, ch. 203, § 14, now codified at 51 O.S.991, § 164, reads:

The laws and statutes of the State of Oklahoma and the Rules of Civil Procedure, as promulgated and adopted by the Supreme Court of Oklahoma insofar as applicable and to the extent that such rules are not inconsistent with the provisions of this act, shall apply to and govern all actions brought under the provisions of this act.

**12.** The words of a statute will be given a plain and ordinary meaning, unless contrary to the purpose and intent of the statute when considered as a whole. *Keck v. Oklahoma Tax Commission*, 188 Okla. 257, 108 P.2d 162 (1941).

**13.** 669 P.2d 766, 768 (Okla.1983).

**14.** 12 O.S.1981, § 323, prohibits the joinder of liability insurers as a party to a tort action.

**15.** 1984 Okla.Sess.Laws, ch. 226.

**16.** *Vanderpool v. State of Oklahoma*, 672 P.2d 1153 (Okla.1983).

**17.** 1984 Okla.Sess.Laws, ch. 226, effective October 1, 1985.

**18.** 1984 Okla.Sess.Laws, ch. 226, § 3, codified at 51 O.S.1991, § 152.1(A).

**19.** 1984 Okla.Sess.Laws, ch. 226, § 3, codified at 51 O.S.1991, § 152.1(B).

**20.** *Vanderpool v. State*, 672 P.2d at 1154.

ment of tort claims "to the extent and in the manner provided." [21]

The extent to which a tort claim may be judicially enforced against the government is prescribed in various sections such as § 154 limiting the amount of governmental liability and removing the government from joint liability. The manner in which a party may overcome sovereign immunity and maintain an action against the government is narrowly structured [22] by the procedural prerequisites in §§ 156 and 157. The pertinent provisions of 51 O.S.1991, § 156 provide:

A. Any person having a claim against the state or a political subdivision within the scope of this act shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages.

B. Claims against the state or a political subdivision are to be presented within ninety (90) days of the date the loss occurs. In the event a claim is presented following ninety (90) days after the loss occurs, but within one (1) year after the loss occurs, any judgment in a lawsuit arising from the act which is the subject of the claim shall be reduced by ten percent (10%). A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.

C. A claim against the state shall be in writing ...

D. A claim against a political subdivision shall be in writing ...

E. ... The time for giving written notice of claim pursuant to the provisions of this section does not include the time during which the person injured is unable due to incapacitation from the injury to give

notice, not exceeding ninety (90) days of incapacity.

51 O.S.1991, § 157 provides:

A. A claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the interested parties have reached a settlement before the expiration of that period. A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part. The claimant and the state or political subdivision may continue attempts to settle a claim, however, settlement negotiations do not extend the date of denial.

B. No action for any cause arising under this Act, Section 151 et seq. of this title, shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section. Neither the claimant nor the state or political subdivision may extend the time to commence an action by continuing to attempt settlement of the claim.

■ Whether § 100 applies to save Cruse's refiled action rests on our analysis of §§ 156 and 157, specifically the 180–day time limitation on commencement of an action.[23] Facially these statutes delineate time-limited prerequisites to judicial enforcement of a tort claim against the government.[24] The procedure spans a two-year time frame. Beginning with the date of loss, the two-year time consists of intervals for incapacitation (ninety days), filing of notice of claim (one year), denial of claim (ninety days), and filing of an action (one hundred and eighty days). Upon compliance with the time-limited procedural steps in §§ 156 and 157, the state's consent

21. Although the Legislature consented to the filing of certain tort actions against Oklahoma's political subdivisions in the Political Subdivision Tort Claims Act, that act did not codify the common law doctrine of sovereign immunity.

22. *Jarvis v. City of Stillwater,* 732 P.2d 470, 473 (Okla.1987).

23. The cardinal rule of statutory construction is to ascertain and give effect to legislative intent. *Humphrey v. Denney,* 757 P.2d 833 (Okla.1988).

24. *Gurley v. Memorial Hospital of Guymon,* 770 P.2d 573, 576 (Okla.1989), recognized the notice of claim as a condition precedent to suit against a political subdivision or a jurisdictional prerequisite to judicial intervention and held that the purchase of liability insurance by a political subdivision can not dispense with the notice of claim requirement.

to be sued is manifest, the sovereign immunity bar is removed, and a judicial remedy for enforcement of the tort claim against the state or political subdivision may be maintained.

The language in § 156 clearly expresses intent that the one-year limitation for filing the written notice of claim operates as an absolute bar to the claim.[25] Similar language in the Political Subdivision Tort Claims Act has been determined, on its face, to absolutely bar a claim. In *Johns v. Wynnewood School Board of Education*,[26] written notice of the claim was presented to the school nearly two years after the minor plaintiff was injured. Relying upon the language in § 156 that a claim **shall be forever barred** unless notice thereof is presented within one hundred and twenty days after the loss occurs and the language excluding a period of ninety days during which the party is incapacitated as a result of the injury, *Johns* held that the provisions of 12 O.S.1981, § 96 do not apply to extend the time to give notice of claim on behalf of a minor under the Political Subdivision Tort Claims Act.[27] In the instant case, the district court and the Court of Appeals substituted the 180–day time period for commencement of action for the 120–day time period for giving notice of claim in the 1978 version of § 156 and thus determined that *Johns* is controlling authority. The language in § 157, however, differs significantly from the language in § 156, hence we do not find *Johns* to be dispositive.

In the absence of a clear expression that failure to comply with a statutory requirement forever bars the tort claim as in *Johns,* the time limitations prescribed by §§ 156 and 157 have been construed so as to accomplish the statutory purpose. *Trent v. Board of County Commissioners of Johnston County,*[28] concluded that the 90–day period for a political subdivision to deny a claim prevents needless delay for the benefit of the injured claimant and held that actual notice of the denial of a claim to claimant's attorney triggers the running of the 180–day time for commencement of suit. In *Whitley v. Oologah Independent School District No. I–4 of Rogers County,*[29] the 90–day period for the school district to deny the claim was deemed tolled by settlement negotiations and therefore the 180–day period for commencing an action was not triggered.[30]

Upon consideration of the various versions of the statutes and our attendant decisional law, the purpose of the 180 days to commence an action within the two-year time period delineated in §§ 156 and 157 is apparent. It preserves to the government the two-year time limitation on tort actions against private persons. Section 156 provides that an action shall not be maintained unless commenced within one hundred eighty (180) days after valid notice has been given (1 year plus 90 days for incapacity) and denial of the claim (90 days). The general

---

**25.** In 1992, § 156(B) was amended. 1992 Okla. Sess.Laws, ch. 285, § 4. The Legislature deleted the provision requiring ten percent reduction in the amount of judgment where notice of claim was filed after ninety days after the loss occurred but within one year from the date of loss. Section 156(B) now reads:

> B. Claims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs. See, *Mansell v. City of Lawton,* 901 P.2d 826 (Okla.1995).

**26.** 656 P.2d 248, 249–250 (Okla.1982).

**27.** *Johns* concerned 51 O.S.Supp.1978, § 156(B), which read:

> B. A claim against a political subdivision or employee shall be forever barred unless notice thereof is filed with the clerk of the governing

body of the political subdivision within one hundred twenty (120) days after the loss occurs.

**28.** 755 P.2d 615 (Okla.1988).

**29.** 741 P.2d 455 (Okla.1987).

**30.** In *Whitley,* the injury occurred on June 18, 1982; the superintendent of the school district was notified of the claim on July 13, 1982; settlement negotiations with the insurer proceeded, when suit was filed on July 7, 1983. Subsequently, the Legislature amended § 157 expressly providing that settlement negotiations do not extend the time for commencement of an action. 1988 Okla.Sess.Laws, ch. 241, § 5. Most recently, the Legislature has authorized the parties to extend the 90–day time for denial of the claim by written agreement. 1995 Okla.Sess.Laws, ch. 121, § 1, effective November 1, 1995. See, footnote 31, infra.

statute of limitations on torts provides that an action can only be brought within two years "after the cause of action shall have accrued and not afterwards(.)" The two-year statute of limitations on tort actions against private persons is mirrored by the two-year time period prescribed in §§ 156 and 157, imposing the same time limitation upon the commencement of public torts as is imposed upon the commencement of private torts.[31]

■ The general statute of limitations on torts operates to bar the remedy rather than to extinguish the substantive cause.[32] The Board contends that the 180–day time limit attaches to the right to bring a governmental tort claims action and becomes an element of the claim; and, failure to meet the time 180–day time limit extinguishes the claim.[33] By the terms of § 156(B), the 180–day time limit regulates the time to bring a governmental tort claims action to which the Legislature has given its consent. That is, failure to meet the 180–day time limit operates to bar judicial enforcement of a claim against the government.[34] This construction achieves the purpose of the two-year time frame in §§ 156 and 157. Upon compliance with the time-limited filing of written notice of claim and denial of claim in §§ 156 and 157, the state's consent to be sued is manifest and the court may exercise judicial power to remedy the alleged tortious wrong by the government. The 180–day limitation on commencement of an action in § 157 operates to bar judicial enforcement to which the Legislature waived sovereign immunity.

(Emphasis added.)

Our comparison of the two-year time frame in §§ 156 and 157 with the general two-year time limitation on tort actions has aided in determining the nature of the involved 180–day limitation, but it does not obviate the time limitations imposed upon the notice of claim and denial of claim requirements in §§ 156 and 157.

31. Legislative intent to impose the same time restraints upon tort actions against the government as the general statute of limitations is apparent in the most recent amendment to § 157. 1995 Okla.Sess.Laws, ch. 121, § 1, effective November 1, 1995, reads:

A. A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part. A claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period. If the state or a political subdivision approves or denies the claim in ninety (90) days or less, the state or political subdivision shall give notice within five (5) days of such action to the claimant at the address listed in the claim. If the state or political subdivision fails to give the notice required by this subsection, the period for commencement of an action in subsection B of this section shall not begin until the expiration of the ninety-day period for approval. The claimant and the state or political subdivision may continue attempts to settle a claim, however, **settlement negotiations do not extend the date of denial unless agreed to in writing by the claimant and the state or political subdivision.**

B. No action for any cause arising under this act, Section 151 et seq. of this title, shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section. **The claimant and the state or political subdivision may agree in writing to extend the time to commence an action for the purpose of continuing to attempt settlement of the claim except no such extension shall be for longer than two (2) years from the date of the loss.**

32. *Estate of Speake*, 743 P.2d 648, 652 (Okla. 1987), explains that an ordinary statute of limitation regulates the time for bringing the action and that it bars the remedy not the substantive cause or claim, unless the prescribed time is so specifically attached to the substantive claim that it must be construed as an element of the claim.

33. *Estate of Speake*, 743 P.2d at 652.

34. The dissent reads the Governmental Tort Claims Act as creating a substantive "right of action" and a substantive time limit on the newly-created right of action. Our extant decisional law defines "right of action" as pertaining to the remedy, rather than pertaining to the substantive law and distinctly separates the remedial "right of action" from the substantive "cause of action." *Landry v. Acme Flour Mills Co.*, 202 Okla. 170, 211 P.2d 512, 515 (1949). Accord, *State ex rel, Southwestern Bell Telephone Company v. Brown*, 519 P.2d 491, footnote 1 at 497 (Okla. 1974), wherein this Court recognized that "right of action" and "cause of action" are often interchanged and then explained that "right of action" pertains to the remedy and relief through judicial proceedings for satisfaction of a "cause of action." See also, *Rock Island Mining Co. v. Allen*, 106 Okla. 188, 233 P. 1060 (1924), wherein the Court determined that § 100 applies to a wrongful death action that was originally filed within the two-year limitation in the statute creating the wrongful death cause of action.

The Legislature could have forbidden the application of 12 O.S.1991, § 100 to the refiling of a timely-filed governmental tort claims act, but it did not. Reading the Governmental Tort Claims Act in its entirety,[35] we conclude that where valid notice has been given and the governmental tort claims action has been timely filed under § 157, the court's power is invoked and, at that point, pursuant to the broad terms of 51 O.S.991, § 164, the governmental tort claims action is controlled by the laws of this state, including 12 O.S. 1991, § 100.

■ Section 100 permits the refiling of a governmental tort claims action only where the court's power has been invoked by the original action. The pleadings in the original action raise a serious question as to the court's power to enforce Cruse's claim— whether this action is exempted from the waiver of sovereign immunity bar by 51 O.S. 1991, § 155(8).[36] Because resolution of this question may require factual findings, it must be determined by the court of first instance. Accordingly, this cause is remanded for further proceedings consistent with this opinion.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE TRIAL COURT REVERSED; CAUSE REMANDED FOR FURTHER PROCEEDINGS.**

KAUGER, V.C.J., and HODGES, SUMMERS and WATT, JJ., concur.

LAVENDER, SIMMS, HARGRAVE and OPALA, JJ., dissent.

SUMMERS, Justice, concurring, with whom WATT, Justice joins.

The dissent perceives the majority's opinion as declaring 51 O.S.1991 § 157(B) a true statute of limitations. I do not read it that way. My view is that even if § 157(B) is a condition on the right to sue, which I believe it is, a defendant is entitled to its protection only until the plaintiff has brought a timely suit. Once a plaintiff has timely sued, satisfying the statute by which the action is created, then § 100 kicks in to allow dismissal and refiling one time. The substantive time bar did not lapse; the right did not die. And that is because the substantive statute was fully satisfied by the original filing. Such is the status of our jurisprudence on allowing § 100 to keep alive claims created only by statute. *Amsden v. Johnson,* 74 Okla. 295, 158 P. 1148 (1916) (action to enforce mechanic's lien); *Rock Island Mining Co. v. Allen,* 106 Okla. 188, 233 P. 1060 (1924) (wrongful death action).

Section 100 is broadly written:

If *any action* is commenced within due time . . . the plaintiff . . . may commence a new action . . . although the *time limit* for commencing the action shall have expired. . . . (emphasis mine)

"Any action" is broad enough to include common law actions as well as ones created by statute. "Time limit" is broad enough to include true statutes of limitation as well as statutes conditioning the right to sue.

OPALA, Justice, with whom SIMMS, Justice, joins, dissenting.

Today's opinion holds that the provisions of 12 O.S.1991 § 100,[1] the so-called "saving statute", will protect from destruction by lapse of time claims under the Government Tort Claims Act [GTCA].[2] Because I view § 157(B)[3] *not* as a *true* statute of limitations

---

35. The provisions of a statute should be construed in light of the entire legislative act. *TRW/Reda Pump v. Brewington,* 829 P.2d 15, 20 (Okla. 1992).

36. *Jurisdictional inquiries may be made by the courts at any stage of the proceedings. Cate v. Archon Oil Co.,* 695 P.2d 1352 (Okla.1985).

1. The terms of 12 O.S.1991 § 100 provide in pertinent part:
"If any action is commenced within due time, and . . . the plaintiff fail in such action other than upon the merits, the plaintiff . . . may commence a new action within one (1) year after the . . . failure although the time limit for commencing the action shall have expired before the new action is filed."

2. 51 O.S.1991 § 151 *et seq.*

3. The terms of 51 O.S.1991 § 157(B) provide in pertinent part:
"No action for any cause arising under [the GTCA] *shall be maintained* unless valid notice has been given *and the action is commenced within one hundred eighty (180) days after denial of the claim . . . .*" (Emphasis added.)

but rather as a *condition upon the exercise of a newly-created right*—the common law's *ius maius* [4]—I cannot accede to today's pronouncement.

The court's analysis is likely to affect adversely the symmetry and stability of our public tort system by bringing about at least two harmful consequences: (1) it will expose the provisions of § 157(B) to a serious cloud of infirmity as a "special law" constitutionally condemned by OKL. CONST. ART. 5, § 46 [5] and (2) claims arising from out-of-state torts pressed in foreign fora against Oklahoma's governmental entities will doubtless be treated as subject to longer and more expansive sister-state limitations. The latter result clearly is repugnant to the now-prevailing national choice-of-law rules.

## I

### THE ANATOMY OF LITIGATION

Harry and Maude Cruse [the Cruses] timely notified [6] the Atoka County clerk [the County] of their *claim* for bodily injury and property damage arising out of a single-automobile accident on a washed-out county road. That claim, which was not met with a favorable response within the statutory time of ninety (90) days, is hence to be deemed legally denied.[7] The Cruses brought a district court action against the County within the GTCA's 180–day period. They then *voluntarily dismissed the suit without prejudice* [8] and later refiled it *more than 180 days after the effective date of the claim's denial.* The trial court dismissed the *second* action because it was not commenced within the statutory interval of 180 days.

The Court of Appeals affirmed this nisi prius order. We granted certiorari and today declare the provisions of 12 O.S.1991 § 100 effective to rescue the dead right of the Cruses from the 51 O.S.1991 § 157(B) time bar.

## II

### THE TIME LIMIT IN WHICH A GTCA CLAIM MAY BE BROUGHT OR MUST BE AFTERWARD FOREVER LOST MUST BE TREATED AS *SUBSTANTIVE* IN CHARACTER AND AS A *CONDITION UPON THE EXERCISE* OF A *RIGHT* RATHER THAN A TRUE STATUTE OF LIMITATIONS

*The common law is the only legal system in the world having a right/remedy dichotomy.* While a right can never die,[9] limitations of time merely bar the demandant's *remedy.*[10] A lost remedy may be revived by an

---

4. For a definition of *ius maius* see *infra* note 9.

5. *See infra* note 26 for the terms of OKL. CONST. ART. 5, § 46.

6. The terms of 51 O.S.1991 § 156 provide in pertinent part:
 "A. Any person having a claim against the state or a political subdivision within the scope of [the GTCA] shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages. B. Claims against the state or a political subdivision are to be presented within ninety (90) days of the date the loss occurs. * * * "

7. The terms of 51 O.S.1991 § 157(A) provide in pertinent part:
 "A claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days...."

8. The terms of 12 O.S.1991 § 683 provide in pertinent part:
 "An action may be dismissed, without prejudice to a future action:

 First, By the plaintiff, before the final submission of the case to the jury, or to the court, where the trial is by the court. * * * "

9. *See* COKE ON LITTLETON, INSTITUTES OF THE LAW OF ENGLAND §§ 279 and 478 (1853). An aggrieved party at common law always retained a *ius maius* (a greater right), called in the Norman French *mere dreit (droit majeur)*. 3 HOLDSWORTH, A HISTORY OF ENGLISH COMMON LAW 89 (1926). "An immortal right to bring an eternally prohibited action is a metaphysical subtlety" produced for the English common law by medieval jurists. AMES, LECTURES ON LEGAL HISTORY AND MISCELLANEOUS LEGAL ESSAYS 199 (1913). *Jus merum* is the original Latin term by which the old English law referred to a "mere or bare right" which is without either possession or the right of possession. *Pryse Monument Co. v. District Court, etc.*, Okl., 595 P.2d 435, 438 n. 14 (1979); *Stolfa v. Gaines*, 140 Okl. 292, 283 P. 563, 567–570 (1930). It is also used to describe a *ius maius* after its detachment from the remedy.

10. *See* WOOD, LIMITATIONS OF ACTIONS 18 (1882).

obligor's renewed promise or payment upon the extinguished obligation; when so revitalized, it will rejoin the once-detached but still viable right *to become actionable once again.* As Justice Jackson so aptly explained in *Chase Securities Corporation v. Donaldson*[11]:

> "Statutes of limitations always have vexed the philosophical mind for it is difficult to fit them into a completely logical and symmetrical system of law. There has been controversy as to their effect. Some are of the opinion that like the analogous civil law doctrine of prescription limitations statutes should be viewed as *extinguishing the claim and destroying the right itself.* Admittedly it is troublesome to sustain as a 'right' a claim that can find no remedy for its invasion. On the other hand, some common-law courts have regarded true statutes of limitation as doing no more than to *cut off resort to the courts for enforcement of a claim.* We do not need to settle these arguments." (Emphasis mine.) (Footnotes omitted.)

The right/remedy dichotomy of the English common law survives today in the form of two conceptually distinct time bars—(1) an "ordinary" or "true" statute of limitations that regulates the time to *bring an action* and (2) a time limit that *conditions the exercise of a right* and is hence to be treated as a substantive-law element of the claim. When the statute of limitations expires, merely the *remedy* is extinguished; when a *substantive-law* time bar lapses, the *right* dies. A dead right can never be revived. This ancient verity finds repeated expressions in our extant jurisprudence.[12] The common-law "right" is to be distinguished from the term "right of action". The latter phrase—which identifies a concept borrowed from the New York Field Code—is found in our state constitution[13] and means the right effectively to pursue an available remedy,[14] not the common law's concept of an immortal right—*ius maius.*

Whether the § 157(B) time period in which a public-tort claim may be commenced represents *a limit on the exercise of a right* or an ordinary limitation (to bring an action) is a question of legislative intent.[15] The terms of § 157(B) plainly evince concern for *expediency* in prosecuting all GTCA claims. That section's language spells out that no tort claim *shall be maintained* beyond the 180-day period. In short, the § 157(B) time interval is not intended to be merely remedial. It is a condition on the exercise of a right and cannot hence be extended by the one-year saving statute. *Nothing can ever revive a right that has died.*[16] In contrast to the terms of § 157(B), certain provisions of 12 O.S.1991 § 95[17]—the *true* statute of limita-

---

**11.** 325 U.S. 304, 313, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945).

**12.** *See Hiskett v. Wells,* Okl., 351 P.2d 300 (1959) (the court's syllabus ¶ 1), where the court says "A substantive statute of limitation is a condition or limitation on the right sought to be enforced, and is generally a part of the right of action created by the same statute, which generally creates a new liability, authorizes an action to enforce it, and limits the time within which [it may be brought]."; *Matter of the Estate of Speake,* Okl., 743 P.2d 648, 653 (1987); *Trinity Broadcasting Corp. v. Leeco Oil Co.,* Okl., 692 P.2d 1364, 1367 (1984); *Phillips Petroleum Company v. United States Fidel. & G. Co.,* Okl., 442 P.2d 303, 305 (1968); *Saak v. Hicks,* Okl., 321 P.2d 425, 429 (1958); *Pinson v. Robertson,* 197 Okl. 419, 172 P.2d 625, 627 (1946). *See also Whitley v. Oologah S.D. I–4 of Rogers County,* Okl., 741 P.2d 455, 457–459 (1987) (Opala, J., concurring), where the author explained the difference between (1) the GTCA's 90–day pre-suit notice provision and (2) its 180–day claim-commencement time bar.

**13.** OKL. CONST. ART. 23, § 7; WILLIAMS, THE CONSTITUTION OF OKLAHOMA 300–301 (1941). *See also in this connection* N.Y. CONST. ART. 1, § 16.

**14.** *Roberts v. Merrill,* Okl., 386 P.2d 780, 785–786 (1963).

**15.** *Speake, supra* note 12 at 653; *State ex rel. Cent. State Griffin Mem. Hosp. v. Reed,* Okl., 493 P.2d 815, 817–818 (1972).

**16.** *See* Marian P. Opala, *Praescriptio Temporis and Its Relation to Prescriptive Easements in the Anglo–American Law,* 7 TULSA L.J. 107, 108–109 (1971).

**17.** The terms of 12 O.S.1991 § 95 provide in pertinent part:

> "Civil actions other than for the recovery of real property *can only* be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
>
> * * * * * *
>
> Third. Within two (2) years: An action ... for injury to the rights of another...." (Emphasis added.)

tions applicable to negligence actions (and keenly ignored by today's opinion)—do *not* presume to *limit* judicial cognizance of a tardy claim. They *allow* a negligence action *to be brought* within a specific time but not afterward. While the § 100 saving statute [18] *may* be invoked to extend the time for the pursuit of a private tort *remedy*, it can *never* avail to resurrect a *lost right* to press a public tort.

## III

### TODAY'S OPINION, WHEN MEASURED BY NATIONAL STANDARDS, REPRESENTS ABERRATIONAL JURISPRUDENCE FOR PUBLIC TORT LAW

This court has previously committed itself to *not* treating the § 157(B) time limit as an ordinary statute of limitations. Extant jurisprudence—*Johns v. Wynnewood School Bd. of Educ.*[19]—rests on the principle that because the GTCA crafts a right unknown at common law, its time bar for pressing a claim constitutes a substantive-law condition on the exercise of that right.[20] The GTCA's time limit controls over general statutory law.[21] *Other states similarly consider public-tort limits to be substantive-law preconditions to suing the government, not statutes of limitations.*[22] Federal jurisprudence does not treat the time limit for pressing torts against

the United States government as an "ordinary limitation".[23] In a case from the U.S. Court of Appeals for the Tenth Circuit, the Oklahoma "saving statute" was *explicitly* held unavailable as a device for extending the time to file a federal-tort claim.[24] Today's pronouncement *rejects the teachings of Johns* and its progeny. It sets us adrift on an uncharted sea away from the national mainstream.

## IV

### THE COURT CONSTRUES § 157(B) IN A MANNER THAT MAKES ITS PROVISIONS AND THOSE OF § 156(B) [25] VIOLATIVE OF OUR FUNDAMENTAL LAW

Since today's opinion declares the § 157(B) bar to be a *true statute of limitations* extendible by a timely § 100 refiling, it implicitly characterizes that time-limit provision as *purely procedural* and indistinguishable from that which applies to private torts. "Special" limitations for actions that fall within the same class run directly afoul of OKL.CONST. ART. 5, § 46.[26] Section 46 mandates a procedural uniformity for an entire class of similarly situated persons or things.[27] Legislative enactments must be construed, if possible, to give them constitu-

See *Hester v. Purex Corporation, Ltd.*, Okl., 534 P.2d 1306, 1308 (1975).

**18.** 12 O.S.1991 § 100, *supra* note 1.

**19.** Okl., 656 P.2d 248 (1982).

**20.** *Johns, supra* note 19 at 249.

**21.** *Fuller v. Odom,* Okl., 741 P.2d 449, 451 (1987); *Hamilton v. Vaden,* Okl., 721 P.2d 412, 419 (1986); *Conway v. Ohio Casualty Ins. Co.,* Okl., 669 P.2d 766, 768 (1983); *Graves v. Rose,* Okl., 663 P.2d 733, 735 (1983); *Johns, supra* note 19 at 249; *McCracken v. City of Lawton,* Okl., 648 P.2d 18, 20 (1982).

**22.** *City of Ft. Wayne v. Cameron,* 267 Ind. 329, 370 N.E.2d 338, 340 (1977); *City of Birmingham v. Weston,* 233 Ala. 563, 172 So. 643, 645 (1937); *Peoples v. City of Valparaiso,* 178 Ind. 673, 100 N.E. 70, 71 (1912) (*overruled on other grounds, Aaron v. Tipton,* 218 Ind. 227, 32 N.E.2d 88, 90 (1941)).

**23.** *Benge v. U.S.,* 17 F.3d 1286, 1288 (10th Cir. 1994); *Pipkin v. United States Postal Serv.,* 951 F.2d 272, 274 (10th Cir.1991).

**24.** *Benge, supra* note 23 at 1288.

**25.** For the provisions of 51 O.S.1991 § 156(B), see *supra* note 6.

**26.** The terms of OKL. CONST. ART. 5, § 46. provide in pertinent part:

"The legislature shall not, except as otherwise provided in this Constitution, pass any *local or special laws* authorizing:

\* \* \* \* \* \*

For limitation of civil or criminal actions; \* \* \*" (Emphasis added.)
*City of Tulsa v. Macura,* 186 Okl. 674, 100 P.2d 269, 270 (1940) (the court's syllabus ¶ 2).

**27.** *Reynolds v. Porter,* Okl., 760 P.2d 816, 823 (1988).

tional validity.[28] If the § 157(B) time limit is merely a *procedural* statute of limitations, the regime for vindication of government torts must be identical to that prescribed for private wrongs; and government tortfeasors cannot hence be singled out for the benefit of a "special" pre-suit notice and of its negative limitations period during which no litigation may be brought.[29] Because neither of these provisions applies to private tortfeasors, it could not be extended to govern public actors.[30] In short, only if we recognize government torts as a class *sui generis*, can we justify applying to them the pre-suit notice and negative statute of limitations provisions embodied in the GTCA. Where there are two possible meanings of a statute—only one of which would render its text unconstitutional—the court should adopt the construction that would uphold the enactment.[31] Today's pronouncement that the terms of § 157(B)—which apply *only* to claims against public actors—create a true statute of limitations (and are hence purely *procedural*) casts a cloud on the constitutional validity of that section when its provisions are measured by the standards of OKL. CONST. ART. 5, § 46.[32] *My own* view—that the § 157(B) text establishes a *substantive-law* condition upon the new right to sue the sovereign—would place the 180-day time limit *beyond* the prohibitory reach of § 46.

## V

## THE COURT'S CONCLUSION WILL SUBJECT OKLAHOMA GOVERNMENTAL ENTITIES TO FOREIGN STATUTES OF LIMITATIONS

According to nationally accepted choice-of-law norms, a forum will apply its *own* statute of limitations to an action grounded in foreign law [33] *unless* the foreign limitation *bars the right and not merely the remedy*.[34] In the latter event the substantive law of the other state would govern. Legislative limits

---

**28.** It is a principle of our constitutional law that every statute is to be treated as valid until its nonconformity to fundamental law is clearly shown. *Black v. Ball Janitorial Service, Inc.,* Okl., 730 P.2d 510, 512 (1986); *Public Service Company of Oklahoma v. State,* Okl., 645 P.2d 465, 466 (1982); *Oklahoma Gas & Electric Company v. Corporation Commission,* Okl., 543 P.2d 546, 551 (1975); *McCrady v. Western Farmers Electric Cooperative,* Okl., 323 P.2d 356, 361 (1958).

**29.** These special provisions are found in 51 O.S. 1991 § 156, *supra* note 6.

**30.** *Reynolds, supra* note 27 at 823; *Macura, supra* note 26, 100 P.2d at 270.

**31.** *State v. Oklahoma State Board for Property,* Okl., 731 P.2d 394, 398–99 (1986) (the reviewing court is bound to accept an interpretation that avoids constitutional doubt); *see also Gilbert Central Corporation v. State,* Okl., 716 P.2d 654, 658 (1986); *Ricks Exploration v. Oklahoma Water Resources Board,* Okl., 695 P.2d 498, 504 (1984); *Oklahoma State Election Board v. Coats,* Okl., 610 P.2d 776, 780 (1980).

**32.** Today's characterization of the public-tort time bar regime as indistinguishable from that applicable to private torts casts a heavy cloud on the validity of the GTCA's *notice* provisions, 51 O.S.1991 § 156(B), *supra* note 6. Pre-suit notice requirements for less than an entire litigation class are condemned as "special" laws offensive to OKL CONST ART. 5, § 46. *See Macura, supra* note 26, 100 P.2d at 270.

**33.** RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 142 (1971 version) provides:

"(1) An action will *not* be maintained if it is barred by the statute of limitations of the forum, including a provision borrowing the statute of limitations of another state.
(2) An action *will* be maintained if it is *not* barred by the statute of limitations of the forum, *even though* it *would* be barred by the statute of limitations of another state...."
(Emphasis added.)

**34.** RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 143 (1971 version) provides:

"An action *will not* be *entertained* in another state if it is barred in the state of the otherwise applicable law by a statute of limitations *which bars the right and not merely the remedy.*"
(Emphasis added.)
*Stephens v. Household Finance Corp.,* Okl., 566 P.2d 1163, 1165 (1977); *Bournias v. Atlantic Maritime Co.,* 220 F.2d 152, 156 (2d Cir.1955). *See also Davis v. Mills,* 194 U.S. 451, 453–454, 24 S.Ct. 692, 693, 48 L.Ed. 1067 (1904). It is, of course, for the forum to determine how the foreign court would characterize its own limitation. *Earnhardt v. Shattuck,* 232 F.Supp. 845, 847 (D.Vt.1964). "The major problem with this inquiry lies in the fact that the foreign characterization *may not have been made for conflicts purposes.*" (Emphasis added.) *Eugene F. Scoles and Peter Hay,* CONFLICT OF LAWS § 3.10 n. 6 (1982).

on time to bring an action against a government tortfeasor generally fall into this latter category. They constitute a *substantive-law* component of the cause of action, thus making *forum law (lex fori )* inapplicable. The court today not only invites sister states to apply *their* longer limitations to claims against *Oklahoma* governmental entities but also abdicates our law's control over the maximum time for filing these claims. The course it takes is clearly contrary to the extant national jurisprudence. The latter strongly counsels against treating substantive time limits as *true* statutes of limitations.[35]

# VI

## THE GTCA DOES NOT CREATE A "STATUTORY TORT"

At common law a tort is a *civil wrong*.[36] A "statutory tort" creates *a legislatively-crafted duty, unknown to the common law,* and authorizes a recovery for its breach.[37] The

legislature may *explicitly* define a *new* actionable wrong,[38] or a court may divine its availability from a regulatory scheme if (1) a redress-seeking party belongs to a class—*narrower than the public at large*—for whose *special benefit* the new tort was devised, (2) the statutory scheme indicates the law-making body's intent to *create* rather than to *deny* a private right of action and (3) the new claim's private nature does not render it inconsistent with the statute's underlying purpose.[39]

The GTCA fashions *no new actionable civil wrong that is alien to the common-law catalogue of delicts*. Neither does it craft a regulatory scheme which implicitly creates a new right of delictual action. By the GTCA's explicit terms, private tort law is *neither expanded nor constricted*.[40] The Act recognizes government tort accountability, which, where present, is to be *coextensive with that of private wrongdoers*[41] and establishes a *sui generis*[42] *rubric of tort liability* for government actors.[43] It does *not* introduce a new

35. RESTATEMENT, § 143, *supra* note 34. The 1988 *revision* of RESTATEMENT, § 142, *supra* note 33, and *deletion* of § 143 abandons the substantive/procedural dichotomy in favor of choosing the statute of limitations of the state *having the most significant relationship to the occurrence and the parties;* i.e., *always* treating statutes of limitation as *substantive*. This new approach is derived from a single case—*Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 305 A.2d 412, 418 (1973).

36. A tort is "[a] *civil wrong* for which the *remedy* is a *common law action* for unliquidated damages, which is not exclusively the breach of a contract or the breach of a trust or other merely equitable obligation." (Emphasis added.) *Salmond,* LAW OF TORTS 13 (10th ed. 1945).

37. *Bellikka v. Green,* 306 Or. 630, 762 P.2d 997, 1001 (1988).

38. *Loyal Order of Moose, Lodge 1785 v. Cavaness,* Okl., 563 P.2d 143, 146 (1977). Examples of *legislatively-crafted* torts are afforded by 85 O.S. 1991 § 5 (prohibiting the discharge of an employee in retaliation for bringing a workers' compensation claim) and 18 O.S.1991 § 1053(A) (establishing liability of corporate directors for willful or negligent mispayment of dividends). *See Gunn v. Consolidated Rural Water & Sewer,* Okl., 839 P.2d 1345, 1346 (1992); *Gay v. Akin,* Okl., 766 P.2d 985, 991 (1988); *Pierce v. Franklin Elec. Co.,* Okl., 737 P.2d 921, 923 (1987).

39. *Walker v. Chouteau Lime Co., Inc.,* Okl., 849 P.2d 1085, 1086 (1993); *Holbert v. Echeverria,* Okl., 744 P.2d 960, 963 (1987).

40. *Hughey v. Grand River Dam Authority,* Okl., 897 P.2d 1138, 1141 (1995).

41. The terms of 51 O.S.1991 § 153(A) provide in pertinent part:

"The state ... shall be liable for loss resulting from its torts ... *subject to the limitations and exceptions specified in this act and only where the state, ... if a private person or entity,* would be liable for money damages under the laws of this state...." (Emphasis added.)

42. A *sui generis* category is said to be that which is *"the only one of its kind or class "*. *See* Black's Law Dictionary 1434 (6th ed.1990).

43. The GTCA represents a legislative response to our abrogation of sovereign immunity in *Vanderpool v. State,* Okl., 672 P.2d 1153, 1156–1157 (1983). The act is both an adoption of and a conditional waiver of the sovereign immunity doctrine. The terms of 51 O.S.1991 § 152.1 provide in pertinent part:

"A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state ... whether performing governmental or proprietary functions *shall be immune from liability for torts.*
B. The state, *only to the extent and in the manner provided in this act* waives its immunity...." (Emphasis added.)
The terms of 51 O.S.1991 § 153(A) provide in pertinent part:
"The state ... shall be liable for loss resulting from its torts ... *subject to the limitations and*

civil wrong but rather a *new class of tortfeasors*. In short, *the GTCA cannot be analogized to a statutory tort.*

The provisions of § 100 have been widely construed as *purely remedial.* Much like the statutory limitations intended for them to affect, they operate *solely* on the *remedy* and keep it from being *extinguished.* Nowhere in the Anglo–American world of law, in which similar enactments are common, is there a body of recognized authority that would give a statute, like ours, the capacity to *resurrect a dead right.*[44]

### VII

### SUMMARY

Today's opinion erroneously treats the § 157(B) time limit as extendible by the terms of Oklahoma's "saving statute", 12 O.S. 1991 § 100. It erases from the living memory of the law and withholds from obedience nearly nine decades of this state's consistent jurisprudence.[45]

I view § 157(B) as a *condition upon the exercise of the right to sue the government in tort.* Its time bar's expiration deals death not to the legislative *remedy* but to the right itself. A plaintiff's *right* to a vindicated government *wrong*—his (or her) legislatively-created *ius maius*—is *not* immortal. It dies with the lapse of the § 157(B) time limit. *Nothing can thereafter revive it.* My reasons for this conclusion are: (1) § 157(B)'s language clearly demonstrates a legislative intent to *withhold judicial cognizance from all public-tort claims after the prescribed 180–day period had lapsed,* (2) the court's view exposes § 157(B) to the infirmity of a "special law" within the meaning of OKL. CONST. ART. 5, § 46, and (3) today's conclu-

sion invites foreign tribunals *to apply to public-tort claims pressed against Oklahoma governmental entities their own, much longer limitations.*

I hence recede from today's pronouncement and would affirm the trial court's dismissal order or would deny certiorari to allow the Court of Appeals' opinion to stand as the correct exposition of our law.

**44.** For the historical antecedents of 12 O.S.1991 § 100, see *Speake, supra* note 12 at 650 n. 2, where the court refers to Justice Cardozo's opinion in *Gaines v. City of New York,* 215 N.Y. 533, 109 N.E. 594, 595–596 (1915). There, Justice Cardozo traces the evolution of "saving statutes"

from the English Limitation Act of 1623 (21 Jac. I, c. 16, § 4).

**45.** *Speake, supra* note 12 at 653; *Trinity Broadcasting, supra* note 12 at 1367; *Johns, supra* note 19 at 249; *Phillips Petroleum, supra* note 12 at 305; *Hiskett, supra* note 12 at 300; *Saak, supra* note 12 at 429; *Pinson, supra* note 12, 172 P.2d at 627. *See also in this connection Rock Island Coal Mining Co. v. Allen,* 106 Okl. 188, 233 P. 1060, 1063–1064 (1924); *Amsden v. Johnson,* 74 Okl. 295, 158 P. 1148, 1150 (1916).